## Bernice Elizabeth Lam Smoot

### v.

## Ronald Leo Smoot

Record No. 841565

June 12, 1987

Present: Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Cochran, Retired Justice

*William H. Ralston, Jr. (Nancy D. Poster; Moore, Jackson, Graves & Ralson*, on brief), for appellant.
*Paul J. Neal, Jr.* for apppellee.

POFF, J., delivered the opinion of the Court.

We consider two issues presented in a wife's appeal from a divorce decree: whether the chancellor erred in granting the husband a monetary award equal to his cash contribution to the construction of the marital home and whether the chancellor gave proper consideration to the fault ground of divorce in determining the equitable distribution award.

Ronald and Bernice Smoot were married in August 1975. No children were born of their marriage. While married, Ronald and Bernice both were employed as public school teachers, and their incomes were approximately equal.

Bernice had purchased a house in 1973, and Ronald and Bernice resided there following their marriage until 1981. That residence is titled solely in Bernice's name and Ronald agrees that it remains her separate property for purposes of this suit. Prior to the marriage, Bernice and another individual had acquired a joint tenancy in a 4 ½-acre tract of land in Shenandoah County. Ronald purchased that individual's one-half interest for $1,000 and, prior to their marriage, Ronald and Bernice took title to that tract as joint tenants with the right of survivorship.

In 1977, Ronald and Bernice commenced construction of a new home on the 4 ½-acre tract. Funding was obtained from two sources: a $25,000 construction loan secured by a deed of trust on the property, and $20,000 in cash contributed by Ronald. The $20,000 represented a portion of a settlement Ronald had received for an injury he sustained in an automobile accident two years before the marriage.

Construction of the home was completed in the spring of 1981. During the four-year period of construction, Bernice's salary was used to pay the parties' basic living expenses, while Ronald's earnings were spent primarily on construction bills.

Following an extended series of disputes between the parties and unsuccessful attempts at reconciliation, Ronald left the home on February 15, 1982. On February 23, 1983, he filed a bill of complaint seeking a no-fault divorce. Ronald's bill recited that he had used $20,000 of his personal injury settlement in the construction of the marital home; that he was obligated to repay his father $2,500 which he had borrowed in order to purchase appliances for the home; and that he had expended $2,765.06 for carpeting for the home. Ronald asked the court to award "separate property to the Complainant" in the amount of $25,265.06. Alternatively, he asked the court to award this amount to him "based upon the equities and pursuant to Code of Virginia Section 20-107.3" in the event the court concluded the sum was not separate property. Bernice filed an answer to the bill of complaint and a cross-bill seeking a divorce *a vinculo matrimonii* on the grounds of willful desertion and/or adultery.

The cause was referred to a commissioner in chancery. At the time of the commissioner's hearing in July 1983, the parties stipulated that the value of the residence was $89,000. After deducting the balance due on the deed of trust note, the couple had an equity of $67,359.42 in the home. The commissioner recommended that Ronald be awarded a no-fault divorce. The commissioner also recommended "that the marital domicile be sold and that out of the proceeds of said sale that the Complainant receive [$20,000] representing his contribution of separate property into the purchase and construction of said marital domicile, in addition to his equity in said real estate."

The chancellor sustained Bernice's exception to the commissioner's recommendation that Ronald be granted a divorce. Although the chancellor found Bernice's evidence insufficient to prove adultery, he agreed that she was entitled to a divorce on the ground of desertion. The chancellor overruled Bernice's exception to the commissioner's recommendation of a monetary award to Ronald, holding that Ronald was entitled to "a credit . . . of $20,000 for funds contributed by him . . . for construction of the improvements on the [4 ½-acre] lot". Finding that Bernice was entitled to a credit of $1,991.46 for sums she had contributed and that the marital home was the only marital property subject to equitable distribution, the chancellor ruled that, after deducting the two credits from the equity in the marital home, "[t]he sum remaining shall accrue one-half each to the parties."

On appeal, Bernice argues that, by awarding Robert the $20,000 monetary award, the chancellor, in effect, classified the marital home as "part marital and part separate", and, Bernice says, such a classification is not permitted by Virginia's equitable distribution statute. She notes that, in his letter opinion, the chancellor discussed the case of *Harper* v. *Harper*, 294 Md. 54, 448 A.2d 916 (1982). There the Court of Appeals of Maryland applied the "source of funds" doctrine to determine the parties' rights with respect to marital property purchased in part with separate funds. Construing the Maryland statute, the *Harper* court explained:

Under [the source of funds] theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution.

*Id.* at 80, 448 A.2d at 929.

We agree with Bernice that Virginia's equitable distribution statute does not adopt the source of funds doctrine as explained and applied in *Harper*. Under Code § 20-107.3,* the

---

* The statute as written when the final decree was entered in this cause, *see* Acts 1984, c. 649, read as follows:

A. Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce from the bond of matrimony, the court, upon motion of either party, shall determine the legal title as between the parties, and the ownership and value of all real and personal property of the parties and shall consider which of such property is separate property and which is marital property.

1. Separate property is (i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; and (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property. Income received from, and the increase in value of, separate property during the marriage is separate property.

2. Marital property is (i) all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise, and (ii) all other property acquired by each party during the marriage which is not separate property as de-

chancellor is directed, first, to determine the legal title to all the

fined above. All property acquired by either spouse during the marriage, before the filing of a bill of complaint stating a ground for divorce, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

B. For the purposes of this section only, both parties shall be deemed to have rights and interests in the marital property; however, such interests and rights shall not attach to the legal title of such property and are only to be used as a consideration in determining a monetary award, if any, as provided in this section.

C. The court shall have no authority to order the conveyance of separate property or marital property not titled in the names of both parties; however, in the final decree of divorce the court may partition marital property which is titled in the names of both parties.

D. Based upon the equities and the rights and interests of each party in the marital property, the court may grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party. The party against whom a monetary award is made may satisfy the award, in whole or in part, by conveyance of property, subject to the approval of the court.

Any marital property, which has been considered or ordered transferred in granting the monetary award under this section, shall not thereafter be the subject of a suit between the same parties to transfer title or possession of such property.

E. The amount of the award and the method of payment shall be determined by the court after consideration of the following factors:

1. The contributions, monetary and nonmonetary, of each party to the well-being of the family;

2. The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;

3. The duration of the marriage;

4. The ages and physical and mental condition of the parties;

5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of § 20-91 (1), (3) or (6) or § 20-95;

6. How and when specific items of such marital property were acquired;

7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;

8. The present value of pension or retirement benefits, whether vested or nonvested;

9. The liquid or nonliquid character of all marital property;

10. The tax consequences to each party; and

11. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

F. The court shall determine the amount of any such monetary award without regard to maintenance and support awarded for either party or support for the minor children of both parties and shall, after or at the time of such determination and upon motion of either party, consider whether an order for support and maintenance of a spouse or children shall be entered or, if previously entered, whether such order shall be modified or vacated.

G. No part of any monetary award based upon the value of pension or retirement benefits, whether vested or nonvested, shall become effective until the party against

real and personal property of the parties and to classify it as separate property or as marital property; second, to determine the value of that property; and, third, to make an equitable distribution of all property classified as marital property. As a tool to facilitate an equitable (as distinguished from an equal) distribution of marital property, the chancellor is authorized to weigh the equities of the parties and to make a monetary award. In his determination of the monetary award, the chancellor is required to consider the 11 factors enumerated in subsection (E) of the statute. *See Robinette* v. *Robinette*, 4 Va. App. 123, 129, 354 S.E.2d 808, 811 (1987).

Unlike the Maryland statute as construed by the *Harper* court, Code § 20-107.3 contemplates only two kinds of property —marital property and separate property, each expressly defined. Our statute does not recognize a hybrid species of property. The discrete definitions are reinforced by the statutory rule that "[a]ll property acquired . . . during the marriage . . . is presumed to be marital property", Code § 20-107.3(A)(2)(ii), and by the proviso in § 20-107.3(A)(1) that all property acquired after the marriage in exchange for separate property becomes marital property unless, during the marriage, it is "maintained as separate property."

We construe the definitions, the presumption, and the proviso to evince legislative intent that when, as here, a spouse fails to segregate and instead, commingles, separate property with marital property, the chancellor must classify the commingled property as marital property subject to equitable distribution. *See In re Marriage of Smith*, 86 Ill. 2d 518, 531-32, 427 N.E.2d 1239, 1245-46 (1981) (applying the doctrine of "transmutation" of separate property into marital property); *but see In re Marriage of Mayzner*, 144 Ill. App. 3d 645, 648-49, 494 N.E.2d 615, 617-18 (1986) (construing Illinois statute as amended).

Although we agree with Bernice that the marital home cannot be classified as part marital and part separate, we reject her

whom such award is made actually begins to receive such benefits. No such award shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made.

H. Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties pursuant to §§ 20-109 and 20-109.1. Agreements, otherwise valid as contracts, entered into between spouses prior to the marriage shall be recognized and enforceable.

further contention that the chancellor's order granting a monetary award to Ronald was grounded in an application of the source of funds doctrine. In a comprehensive letter opinion, the chancellor noted that "the marital home is marital property", that "both parties are deemed to have rights and interests in this marital property", and that those rights and interests are to be used "as a consideration in determining a monetary award, if any". Next, the chancellor observed that, pursuant to subsection (D) of the statute, the court was authorized to grant either party a monetary award computed after consideration of the 11 factors listed in subsection (E). The chancellor then proceeded to discuss those factors seriatim.

Concerning the second factor, which directs the court to consider the monetary and nonmonetary contributions of each spouse "in the acquisition and care and maintenance of . . . marital property", the chancellor found that although other contributions made by the parties "to the well-being of the family unit were equal", Bernice and Ronald were entitled to a "credit" for the monetary contributions each had made to the acquisition and maintenance of the marital home. "To hold otherwise," he said, "would totally ignore [the second] factor."

■ An objective reading of the letter opinion and the final decree shows that the chancellor did not apply the source of funds doctrine as defined in *Harper*. Rather, he merely discussed the rationale in that case as a useful analogy in his construction of Virginia's statutory scheme of equitable distribution. We agree with his interpretation and application of the statute.

This brings us to the second issue raised on appeal. Bernice argues that the chancellor's monetary award to Ronald fails to balance the equities between the parties because he "ignore[d] a factor which was clearly intended by the General Assembly to be included." Bernice refers to the fifth factor under subsection (E) which directs the chancellor to consider "[t]he circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce". Bernice points out that Ronald "was found to be guilty of willful desertion." Bernice seems to interpret the fifth factor to mean that unless a chancellor, having found one party entitled to a divorce on a fault ground, reduces the monetary award due the other party by a sum certain, the equitable distribution award must be reversed as inherently inequitable. We disagree.

■ As we have said, subsection (E) directs the chancellor to consider each of the enumerated factors. The language is mandatory. *See Rexrode* v. *Rexrode*, 1 Va. App. 385, 394-95, 339 S.E.2d 544, 550 (1986). The record before us leaves no doubt that the chancellor gave careful consideration to all the relevant factors. With respect to the fault ground for divorce, he noted that "[t]hough [Ronald] has been found at fault, the total relationship between the parties does not dictate that a division different than as set forth should be made." The chancellor further observed that "the marriage was not a happy relationship between the parties" and that "[t]he evidence shows a marriage that was, and had been, foundering for sometime." The transcript of the testimony upon which the chancellor relies supports the conclusion that Ronald's departure from the marital home, although a legally cognizable fault ground for divorce, was not the cause of the dissolution of the marriage but only the last unhappy event in a marital relationship long since dissolved in fact. Having reached that conclusion, the chancellor could reasonably decide, as he did, that it would be unjust to alter the monetary award to which, in light of the other ten statutory factors, Ronald was equitably entitled.

■ We uphold that decision. The statute empowers the chancellor to determine what property is subject to distribution between the parties, authorizes him to determine the value of that property and the interests of each party, and directs him then to distribute the property equitably. The chancellor has the benefit of statutory guidelines, but because rights and interests in marital property are difficult to determine and evaluate and competing equities are difficult to reconcile, the chancellor is necessarily vested with broad discretion in the discharge of the duties the statute imposes upon him. Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal. *See Gray* v. *Gray*, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985).

Finding no error in the court below, we will affirm the chancellor's decree.

*Affirmed.*