## CIRCUIT COURT OF FREDERICK COUNTY

Leroy David Link

v.

Karen Sue Hartman Link

March 22, 1988

Case No. C-85-69

By JUDGE ROBERT K. WOLTZ

In this divorce suit the parties have opposing contentions as to classification under Code § 20-107.3 of certain property of the complainant husband as separate or marital. The property in question is a cash settlement he received after their separation for a medical malpractice claim arising from surgery performed on him before the marriage. No evidence has been heard nor stipulation entered into and statement of factual matter is gleaned from the pleadings and the uncontroverted assertions appearing in the briefs filed by counsel.

The complainant instituted suit for divorce March 20, 1985, on the ground of living separate and apart uninterruptedly without cohabitation for more than one year. The respondent filed her cross-bill on the alternative grounds of cruelty and adultery and prayed for equitable distribution under the statute. Except for discovery procedures, for some reason, there was no further activity in the case for nearly two years when the parties submitted the present issue on briefs. Listing of material events with their dates appears below:

1. Claimed surgery malpractice    August 1980
2. Marriage          October 1981

3. Enactment of equitable distribution
   statute      July 1, 1982
4. Termination of treatment by surgeon      July 1982
5. Malpractice suit instituted      August 1982
6. Separation of parties      March 1984
7. Statutory amendment of 1984      July 1, 1984
8. Divorce suit instituted      March 1985
9. Settlement of malpractice suit      Dec. 1985

In this case inquiry begins with acknowledgment of the transcendent principle of all divorce actions that jurisdiction is "purely statutory" with no "inherent power" in the courts to go beyond the limits and mandates of statute, *McCotter v. Carle*, 149 Va. 584 (1927), which states at page 593:

> It is an undoubted general principle of the law of divorce in this country that the courts either of law or equity possess no powers except such as are conferred by statute; and that, to justify any act or proceeding in a case of divorce, whether it be such as pertains to the ground or cause of action itself, to the process, pleadings or practice in it or to the mode of enforcing the judgment or decree, authority must be found in the statute, and cannot be looked for elsewhere, or otherwise asserted or exercised.

The same case is also authority that decreeing as to the estate and property of the parties is an incident of divorce and so likewise controlled by statute. Other cases before adoption in Virginia of equitable distribution. *See, e.g., Watkins v. Watkins*, 220 Va. 1051 (1980); *Guy v. Guy*, 210 Va. 536 (1970); and *Smith v. Smith*, 200 Va. 77 (1958); as well as afterwards, *see, e.g., Smoot v. Smoot*, 233 Va. 435 (1987); *Morris v. Morris*, 3 Va. App. 303 (1986); and *Venable v. Venable*, 2 Va. App. 178 (1986), confirm this. The principle of exclusive statutory control of disposition of rights and interests in the estate and property of the parties is intensely applicable in matters of equitable distribution.

The adoption in 1982, after the marriage of the parties, of § 20-107.3 providing for equitable distribution was a revolutionary and arguably a highly remedial legislative action. In events of especial note in the field of divorce, adoption of equitable distribution ranks with the 1847-48 Act containing the first legislative grant of divorce jurisdiction to the courts, the Constitution [1851], Article V, § 35, mandating legislative conferral of divorce jurisdiction on the courts and forbidding legislative divorces, and 1960 Acts, c. 108, with its later extensions, establishing "no fault" divorce.

Subsection A of the statute as originally adopted required on motion of either party "upon" decreeing an *a vinculo* divorce a judicial determination of "the legal title as between the parties, and the ownership and value of all real and personal property of the parties" and required the court to "consider which of such property is separate property and which is marital property." (As to construction of "upon," *see Parra v. Parra*, 1 Va. App. 118 (1985), and *Morris v. Morris, supra*; and *see*, 1986 amendment allowing adjudication of equitable distribution after decree *a vinculo*.)

For the purposes of equitable distribution only, subsection B states:

> [B]oth parties shall be deemed to have rights and interests in the marital property; however, such interests and rights shall not attach to the legal title of such property and are only to be used as a consideration in determining a monetary award, if any, as provided in this section.

Subsection A1 defines separate property as all that acquired by a party before marriage, that acquired during marriage "by bequest, devise, descent, survivorship or gift from a source other than the other party," and that acquired during marriage as a result of sale or exchange of separate property if such newly acquired property is "maintained as separate property."

Subsection A2 defines marital property. For purposes of this decision it is "all other property acquired by each party during the marriage which is not separate

property" as defined in subsection A1. Importantly the original subsection 2 created a presumption that "all property acquired by either spouse during the marriage" is marital property.

The leading case of *Smoot v. Smoot*, 233 Va. 435 (1987), categorically holds that the separate property-marital property statutory dichotomy means what it plainly says and as a result there are no "hybrid" types of property. *See also, Brown v. Brown*, 5 Va. App. 238 (1987). Therefore property is either separate property or marital property; there is no in between. Note that in the original of the statute all property, other than separate property, acquired *during* the marriage was marital property and so subject to equitable distribution. That provision was aided by the presumption that all property acquired during the marriage is marital property. These parties were still married while complainant's claim continued to pend and when he received settlement proceeds of it.

Breaking with the past and its severe strictures on judicial determination of the property rights and interests of spouses consequent on divorce, resulting at times in an inequitable and unduly harsh outcome to one of the parties, the enactment of provision for equitable distribution was clearly remedial action by the General Assembly. Note further, however, that effective July 1, 1984, three and one-half months after separation of the parties, the statute was amended to read:

> All property acquired by either spouse during the marriage *before the filing of a bill of complaint stating a ground for divorce* is presumed to be marital property in the absence of satisfactory evidence it is separate property.[1] (1984 amendatory language emphasized.)

By this 1984 amendment (as well as its further footnoted amendment of 1986) there is discernible an intent by

---

[1] The 1986 amendment went a step further. It struck out the words of the 1984 amendment substituting therefor "and before the last separation of the parties, if at such time or thereafter at least one of the parties intended the separation to be permanent."

the legislature not to cure one equity by imposing another. The original statute and especially provisions in subsection E point to a view of marriage as might in loose lay terms be considered a partnership. The building of a marriage in a close, cooperative, sympathetic and affectionate conjugal relationship through contributions, both monetary and nonmonetary, and the contributions toward undermining that relationship are prime factors in the statutory scheme. But when suit for divorce is filed then irrevocably in most instances "the cake is all dough." Excluding possible obligations of support, at that time earnings, savings and acquisitions from application of one's industry, talents or abilities lose pertinence to the former conjugal relationship. In the same vein is the recompense after suit instituted for one's pain, suffering, disability and loss of earnings resulting from a personal injury predating in this case the marriage itself. The 1984 amendment does not say expressly that such items, if property, are not marital property but at the least it strips from them the presumption that they are.

With the foregoing facts and provisions in mind this compound question arises: Was complainant's malpractice claim when it arose "property," and if not when did it become property, and in any event did it become property at a time when it would be subject to equitable distribution?

In their briefs counsel have cited a number of cases, from other jurisdictions dealing with the problem of personal injury recoveries in relation to equitable distribution. Most of these cases are not available to the court. An additional caveat is that they are dependent on particular statutes, also not available. Not remarkably there is a diversity of holdings. Generally these cases reach three different results, one at either extreme and one in between.

At one extreme are cases girded on a "plain language doctrine." Such decisions hold that a recovery for personal injuries is marital property subject to equitable distribution because of statutory definition and particularly the lack of definition which would exclude the recovery as marital property. Exemplifying this position is *Johnson v. Johnson*, 638 S.W.2d 703 (Ky. 1982), dealing with a

personal injury received during marriage but recovery for which was obtained after separation. Holding similarly are *Gan v. Gan*, 404 N.E.2d 306 (Ill. 1980); *Nixon v. Nixon*, 525 S.W.2d 836 (Mo. App. 1975); and *Marriage of Mack*, 323 N.W.2d 153 (Wis. App. 1982).

Occupying the middle ground are cases holding personal injury recoveries are part marital (or community) property and part are so personal in nature as to be separate property. *Frederickson Co. v. Boyd*, 102 P.2d 622 (Nev. 1940); *Soto v. Vandeventer*, 245 P.2d 826 (N.M. 1952); *Jurek v. Jurek*, 606 P.2d 812 (Ariz. 1980); *Guy v. Guy*, 560 P.2d 876 (Ida. 1977); *Amato v. Amato*, 434 A.2d 639 (N.J. Super. 1981); *Campbell v. Campbell*, 339 S.E.2d 591 (Ga. 1986); *Johnson v. Johnson*, 346 S.E.2d 430 (N.C. 1986). The *Amato* case as well as *Van de Loo v. Van de Loo*, 346 N.W.2d 173 (Minn. App. 1984), in characterizing the nature of the recovery stress that the purpose for which it is received should control and take primacy over the time of receipt. Squaring the results of the cases holding to the intermediate ground with our *Smoot v. Smoot, supra,* rule against hybridization of property would be difficult if not impossible.

At the other end of the spectrum is *Hurley v. Hurley*, 492 A.2d 439 (Pa. Super. 1985), where a spouse sustained personal injury during the marriage and prior to separation but received no recovery until verdict after separation. The court emphasized that the claim was unliquidated and speculative and only on its liquidation after separation did it represent acquired property and was therefore separate property. In *Unkle v. Unkle*, 505 A.2d 849 (Md. 1986), a spouse's claim for personal injuries received during the marriage remained unliquidated at the time of divorce. In determining the claim was not marital property the court mentioned it was "uniquely personal" to the injured spouse and though it might have some attributes of personal property it was not "acquired" during the marriage in contemplation of statute and so failed to meet the definition of marital property. *See also Amato v. Amato, supra.*

Under the facts of this case, I hold the defendant's malpractice claim was not property as contemplated by the statute and that the proceeds received in settlement of that claim are not marital property.

## I. The Malpractice Claim

In § 20-107.3 the word property appears frequently. It speaks of the legal title to and the ownership of and the value of property; it speaks of real property, of personal property whether tangible or intangible, and of acquiring property and its acquisition "by bequest, devise, descent, survivorship or gift," of exchange for and sale of property, of the increase in value of property, of rights and interests in property and the transfer of title or transfer of possession of property. There is nothing in the statute indicating an intent to give the word other than its usual and ordinary meaning; something that has marketability, is saleable, pledgeable, exchangeable and assignable; and if without these attributes, at least something capable of economic utility.

If by semantics and fine reasoning a malpractice claim can be classified as property at all, it is not of a type which the legislature contemplated in the statute. If the claim originally did not constitute property in the sense of this statute, then the marriage of the defendant was not such a legal mutagen as to convert it into that category and so make it marital property.

At early common law many rights such as choses in action were unassignable. Their assignments smacked too much of champerty and maintenance. Many of those rights were assignable in equity and under that influence became assignable at law or by statute and nonassignability is now the exception. 6 Am. Jur. 2d, *Assignments* § 7. Thus choses in action *ex contractu* and some choses in action *ex delicto* are assignable. Those in the latter category which do not deal with damage to property interests but are purely personal in nature such as defamation or personal injury are within the exception and remain nonassignable.

Blackstone in speaking of the "absolute" rights of persons mentions injuries affecting a man's health. Under this heading he includes *mala praxis*, being "the neglect or the unskillful management of his physician, surgeon or apothecary," III Commentaries on the Laws of England 122, the sort of thing on which this defendant's claim was based. That estimable author says in Volume II at page 437:

> But there is also a species of property to which a man has not any claim or title whatsoever, till after suit commenced and judgment obtained in a court of law: where the right and the remedy do not follow each other, as in common cases, but accrue at one and the same time; and where, before judgment had, no man can say that he has any absolute property, either in possession or in action.

Though he does speak of a *species* of property, at page 438 after mentioning certain torts he continues:

> But, however, though strictly speaking the primary right to a satisfaction for injuries is given by the law of nature, and the suit is only the means of ascertaining and recovering that satisfaction; yet, as the legal proceedings are the only visible means of this acquisition of property, we may fairly enough rank such damages, or satisfaction assessed, under the head of property acquired by suit and judgment at law.

Thus at common law *mala praxis* is such a right or claim as to which acquisition of property is only by suit and judgment, or in the instant case by settlement.

Thus the defendant had no property in the usual and the statutory usage of the term in his malpractice claim until it was settled. Until that time it was too inchoate, indefinite, insubstantial to be assignable and without present economic utility except as a foundation for suit by which means property might be obtained, so was not property in contemplation of § 20-107.3.

At common law and until relatively recently in this jurisdiction survivability was the touchstone to assignability. Actions *ex delicto* which were for purely personal wrongs such as to the person or to the reputation did not survive and *ipso facto* could not be assigned. *Richmond v. Hanes*, 203 Va. 102 (1961). That case is also authority that change by statute making actions survivable does not automatically infuse those actions with assignability

in the absence of statute expressly doing so. By statute in Virginia, § 8.01-25, the common law has been so changed that every cause of action survives. This alone does not make such actions assignable and § 8.01-26 provides that only causes of action for damage to real or personal property or those *ex contractu* are assignable. Hence these recent statutory changes in no way elevate the defendant's malpractice claim to the status of genuine viable property; the claim remains outside the pale of property for equitable distribution purposes.

## II. Settlement Proceeds as Marital Property

The $186,000 which the defendant received in settlement of his malpractice claim is indisputably property; one of the preeminent and desirable forms of property is money. The fact that this settlement was received after the separation of the parties, after the 1984 amendment of the statute and after institution of the divorce suit cannot change that fact. Nevertheless this money is not marital property subject to equitable distribution for two reasons.

First, at the time of separation of the parties in March, 1984, § 20-107.3 made property other than separate property "acquired by each party during the marriage" marital property. If the statute had remained unaltered until the defendant received the proceeds in settlement of his malpractice claim then, excepting the reasons given below, likely unassailable argument could be made that the proceeds were marital property.[2] About three months later, the 1984 amendment took effect removing the presump-

---

[2] Even if the proceeds of settlement of the malpractice claim were marital property, our statute is one of equitable, not equal, distribution. Smoot v. Smoot, supra at 441; Papuchis v. Papuchis, and Bentz v. Bentz, 2 Va. App. 130 and 486 (1986). Considering the intensely personal character of the items which are compensated for by way of general damages in personal injury cases--pain, suffering, mental anguish, deformity, disfigurement, inconvenience, embarrassment, disability and the like--it is submitted that there are sufficient among the numerous factors to be considered in making equitable distribution in subsection E of the statute to ameliorate the extent to which a monetary award to one spouse is based upon those items of damage for which the other spouse has been compensated.

tion as to marital property unless the acquisition were before filing the bill of divorce. This property was acquired after the filing of the bill in March, 1985. As a result the favorable presumption in favor of the complainant disappears. Unarmed with that presumption there would be none either way and under familiar principles she being the claimant her claim to the settlement proceeds fails.

Any argument she might have that the statute in unamended form should control because the amendment should not be given retroactive effect must also fail. Generally only those retroactive laws which affect vested rights are invalid. The equitable distribution statute does not vest any one with property rights. The statute, passed after these parties were married, did not vest or divest either of them respecting their property rights. Subsection B of the statute makes that clear and also makes clear that whatever marital property there may be does not inure directly to the benefit of either party, but is only a measuring rod for use in determining the amount of a monetary award. So the 1984 amendment is not impermissibly retroactive. It did not destroy any property right but simply removed a presumption in relation to the use of the measuring rod: the General Assembly giveth and the General Assembly taketh away.

Second, even though the settlement proceeds were received during marriage those proceeds trace back to a time before the marriage when the defendant suffered his injury giving rise to his claim. The true genesis of the defendant's property in the form of settlement proceeds is rooted in a time before the marriage when his unliquidated, inchoate and unassignable claim came into being. For that reason also the settlement moneys are not property for consideration in making equitable distribution.