## Norfolk

BEVERLY S. LASSEN

v.

WILLIAM V. LASSEN, SR.

No. 1415-88-1

Decided August 8, 1989

504

COUNSEL

William A. Cox, III (Kellam, Pickrell, Cox & Tayloe, on brief), for appellant.

Carl W. Isbrandtsen, for appellee.

OPINION

**COLE, J.**—Beverly S. Lassen presents nine issues in this appeal of a final decree of divorce from William V. Lassen, Sr. They are: (1) whether the trial court erred in granting Beverly a divorce on the sole ground of desertion when the commissioner found additional grounds of adultery and cruelty; (2) whether the court erred in reducing the commissioner's recommended award of spousal support; (3) whether the court erred in failing to require William to provide health insurance coverage or pay Beverly's medical expenses; (4) whether the court erred in reducing the commissioner's valuation of William's military pension; (5) whether the court erred in refusing to order the transfer of the parties' separate tangible personal property; (6) whether the court erred in refusing to order the partition of jointly owned marital property; (7) whether the court erred in overruling the commissioner's finding that certain accounts were marital property; (8) whether the court erred in failing to designate a loan made by William during the marriage as marital property; and (9) whether the court's award of attorney fees and expenses to Beverly was inadequate.

Beverly and William were married on August 9, 1975. William retired one year later and his military pension became the couple's main source of support. Conflict developed in 1983 and they separated briefly, then reconciled. A second separation on November 20, 1985, led to this divorce.

## GROUNDS OF DIVORCE

■ Beverly contends the court erred in granting her a divorce on the ground of desertion alone when the commissioner found that grounds of cruelty and adultery also existed. This claim is meritless. Where dual or multiple grounds for divorce exist, the trial judge can use his sound discretion to select the grounds upon which he will grant the divorce. *See Zinkhan v. Zinkhan*, 2 Va. App. 200, 210, 342 S.E.2d 658, 663 (1986). There is no evidence the court abused this discretion.

## SPOUSAL SUPPORT AWARD

■ The commissioner recommended that Beverly be awarded $1,500 per month in spousal support. The trial court reduced the award to $1,200 per month, the amount that she had received *pendente lite*. The court specifically stated it had considered all the factors listed in Code § 20-107.1. When a court awards support based upon due consideration of these factors, as shown by the evidence, its determination "will not be disturbed except for a clear abuse of discretion." *Dodge v. Dodge*, 2 Va. App. 238, 246, 343 S.E.2d 363, 367 (1986). One of the statutory factors is "[t]he provisions made with regard to the marital property under § 20-107.3." We note that prior to setting spousal support, the trial court had increased the monetary award from the commissioner's $27,500 to $36,142. Our review of the record reveals no evidence that the court abused its discretion in determining the amount of the spousal support award.

## HEALTH EXPENSES

■ The trial court adopted the commissioner's recommendation that no provision be made for William to provide health care coverage for Beverly. Code § 20-60.3(5) requires that spousal sup-

port orders contain "[p]rovision . . . for whether and to what extent health care coverage for a spouse or a former spouse is required." There is no statutory mandate that health care coverage be provided, though physical and medical condition of the parties is one fact a court must consider in awarding spousal support. Code § 20-107.1(5). We already have determined that the court gave due consideration to the statutory factors in making the spousal support award to Beverly. We cannot say that the trial court abused its discretion in making no separate provision for health care coverage.

## MILITARY PENSION

At the commissioner's hearing Beverly presented the expert testimony of a certified life underwriter on the present value of William's military pension. He based his computations upon a monthly amount of $2,991, a male age 57 as of November, 1985, and a life expectancy based upon Code § 8.01-419 of 19.5 years. His calculations of present value ranged from $380,584 to $642,017 depending upon various assumptions he made for interest rates and annual increases of interest. He concluded that in his professional opinion a life expectancy of 19.5 years, a rate of interest of seven percent, and an annual increase of five percent was realistic and fair. Therefore, he concluded that the present value of William's pension plan was $591,059. Using this figure as the present value, the marital portion of the military pension was valued at $18,060.

The trial court did not accept the testimony of the underwriter, but took judicial notice of the American Jurisprudence Second Desk Book Compound Interest and Annuity Tables ("Desk Book") and found that the present value of the pension was $366,767 and the marital share was $11,206. Beverly was awarded half the marital share, or $5,603.

Our review of the expert's testimony reveals two reasons why the trial court could have found it unreliable. First, the expert stated that he calculated the present value assuming an age of 57 years. William's age was 59 at the time of the hearing, and using that figure would have provided a more current and accurate figure for present value. *See Mitchell v. Mitchell*, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987). Second, the expert's calculation

assumed a five percent annual increase in the pension based upon the projection of a non-government publication. The same publication contained conflicting projections, indicating that a five percent increase per year was unlikely, and William offered evidence that his pension had actually decreased in the past two years.

■ Beverly argues that it was improper for the trial court to reject the expert's valuation of the pension. It is true that she bore the burden of providing sufficient competent evidence to allow valuation of the pension. *See Bowers v. Bowers*, 4 Va. App. 610, 619, 359 S.E.2d 546, 551 (1987). Expert testimony is the most expedient, and in fact, the preferable method for doing this. But the finder of fact is not required to accept as conclusive the opinion of an expert. *Godley v. Commonwealth*, 2 Va. App. 249, 251, 343 S.E.2d 368, 370 (1986). Where a pension is vested and payments are being made, the court may infer the present value of the pension from the evidence. *See Sawyer v. Sawyer*, 1 Va. App. 75, 80, 335 S.E.2d 277, 281 (1985).

■ Beverly's objections to the trial court's use of the Desk Book were that it was improper for the trial court to take judicial notice of it and that the court failed to reveal the assumptions and calculations it used. We agree. We can find no authority permitting a court to use the Desk Book as the basis for taking judicial notice of facts and none has been cited to us. Courts may take judicial notice of facts commonly known from human experience, but facts which are not commonly known must be proved. The individual and extrajudicial knowledge of a judge cannot be used to dispense with proof of facts not properly the subject of judicial notice, and cannot be resorted to for the purpose of supplementing the record. *Darnell v. Barker*, 179 Va. 86, 93, 18 S.E.2d 271, 275 (1942). A judge may use authoritative sources to refresh his memory upon matters properly subject to judicial notice. However, the mere appearance of facts within publications such as encyclopedias, textbooks and dictionaries, does not, in most jurisdictions, mean that such facts can be judicially noticed unless they are such as to be a part of common knowledge. 29 Am. Jur. 2d *Evidence* § 16 (1966).

We hold that the Desk Book is neither an authoritative publication nor are the present value tables in it a matter of common and general knowledge. Therefore, the trial judge erred in resorting to the Desk Book to calculate the present value of the military pen-

sion plan. We remand for the trial court to determine the present value of the pension plan from the record or, if it be so advised, to take further evidence upon the issue. This mandate carries with it the further mandate that if a difference in present value is found, the monetary award will be adjusted accordingly.

## PERSONAL PROPERTY

The commissioner found that William had possession of household items valued at $1,551 which were Beverly's separate property, that Beverly possessed items valued at $200 which were William's separate property and that William possessed jointly owned items valued at $4,421 which were marital property. Beverly argues that the trial court failed expressly to determine the title to this property, and erred in not ordering the transfer of the separate property to her and the partition of the marital property. We disagree.

The final decree confirms the recommendations of the commissioner, which include his findings as to ownership of personal property. Our review of the record reveals that neither party made a clear request that the court order transfer or partition of the personal property. A request for partition or transfer cannot be made for the first time on appeal. Rule 5A:18. Since the trial court was not requested to rule on these issues, we decline to address them on appeal.

## ACCOUNTS

Three accounts are in dispute, Dean Witter, First Jersey, and Falcon Cable stock. Prior to his marriage to Beverly, William had received through inheritance a substantial sum of money which he had placed in United Virginia Bank certificates of deposit in his name only. Beverly does not claim any interest in the certificates. However, during the marriage, William cashed in some of the certificates and placed the proceeds from the certificates in a checking account in the same bank in his name alone. This testimony indicated that his purpose in doing so was to facilitate transfer of the funds for other purchases in his own name rather than to make the funds marital property. The evidence is vague as to how long the funds remained in the account, but William's testimony

suggests he promptly wrote checks for the Dean Witter, First Jersey, and Falcon Cable accounts from the checking account. There is no evidence, and Beverly does not contend, that these checks were for any amount greater than the certificate proceeds he had deposited. The parties agree that the United Virginia Bank checking account in William's name was marital property. Because he deposited his retirement payments into the checking account during the marriage, the funds were converted from separate property into marital property.

The commissioner reported that the checking account was a joint account and held that it was marital property. He concluded that the three other new accounts were opened with funds from the joint account and were therefore also marital property. The parties agree that there is no evidence in the record to support the finding that the checking account was a joint one. The trial court correctly ruled that the checking account was in William's name alone. The trial court also found that the Dean Witter, First Jersey, and Falcon Cable stock accounts were all purchased from the defendant's separately titled and maintained United Virginia Bank certificates, and, therefore, were William's separate property.

Beverly argues that the proceeds from the certificates became marital property because they were commingled in the United Virginia Bank checking account before purchase of the Dean Witter, First Jersey and Falcon Cable holdings. She cites as support William's testimony before the commissioner, the relevant portion of which follows:

> Well, put it this way, I took money out of Mid-Atlantic to buy money certificates in United Virginia. . . . When they became mature, at times I would choose and I would put them into the Dean Witter account, but since the certificates were with United Virginia . . . when they became mature and I decided to cash them in, I was issued a cashier's check and put it into my United Virginia Bank and then wrote a check to wherever I was going to put them, but the basic money started from Mid-Atlantic.

Separate property of a spouse includes "all property, real and personal, acquired by either party before the marriage . . .

and . . . all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, *provided that such property acquired during the marriage is maintained as separate property.* Code § 20-107.3(A)(1)(i)(iii) (emphasis added). Transmutation is the change of the character of property from non-marital, or separate, to marital. *Westbrook v. Westbrook*, 5 Va. App. 446, 454, 364 S.E.2d 523, 528 (1988). In *Smoot v. Smoot*, 233 Va. 435, 442, 357 S.E.2d 728, 731 (1987), our Supreme Court held that transmutation occurs when "a spouse fails to segregate and instead, commingles, separate property with marital property." Since *Smoot*, we have recognized that separate property may also become marital property where there is proof that this was the intent of the parties. *Westbrook*, 5 Va. App. at 457, 364 S.E.2d at 528 (written agreement that house was owned by both spouses). *See also Brown v. Brown*, 5 Va. App. 238, 243, 361 S.E.2d 364, 367 (1987)(husband's interest in farm could not be classified as part marital, part separate); *Price v. Price*, 4 Va. App. 224, 236, 355 S.E.2d 905, 912 (1987)(separate and marital property commingled to create "new" piece of property). We find that, based upon these principles, the three accounts should have been classified as marital property.

Our holding does not mean that William will not benefit fully from the purchase of the properties with the proceeds from his separate certificates of deposit. It simply means that the properties will be classified and valued as marital property and will be included among all of the marital assets when the trial judge determines the monetary award in accordance with the factors set forth in Code § 20-107.3(E).

## LOAN

Beverly points out that the commissioner failed to include in his listing of marital property a $2,000 loan William made during the marriage to Larkspur Racquet Club. She noted an exception to the omission, which the trial court "[o]verruled as the Court considered the Larkspur 'loan' in the equitable distribution award." By stating that the loan was considered in calculation of the equitable distribution award, the court made clear that it agreed the loan was marital property.

Beverly also argues that the court should have "divided" the loan "in one of the means provided by the statute." While the loan was marital property, William's testimony suggests that it was payable to him. The court had no power to order partition or transfer of the loan unless it were jointly owned. Code § 20-107.3. There is no evidence to this effect. We find that the trial court did not err in using the monetary award to compensate Beverly for any interest she had in the loan.

## ATTORNEY'S FEES

Finally, Beverly contends that she was awarded inadequate attorney's fees and expenses by the trial court. An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion. *Graves v. Graves*, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). We find no evidence that the trial court abused its discretion in this matter.

For the reasons herein stated, the judgment of the trial court is affirmed in part and reversed in part and remanded.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Baker, J., and Moon, J., concurred.