COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Malveaux and Frucci
Argued at Richmond, Virginia


RUBY R. VAUGHAN

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0444-24-2                 JUDGE MARY BENNETT MALVEAUX
                                                             OCTOBER 7, 2025
KENNETH N. VAUGHAN, SR.


             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                            Jayne A. Pemberton, Judge

            Ruby R. Vaughan, *pro se*.

            Kenneth Vaughan, Sr., *pro se*.


        Ruby R. Vaughan ("wife") appeals the circuit court's final decree of divorce from

Kenneth N. Vaughan, Sr. ("husband").  Wife argues that the circuit court erred by not awarding

her more in spousal support and by requiring her to refinance a mortgage that was solely in

husband's name.  For the following reasons, we reverse and remand.

                                    I.  BACKGROUND

        When reviewing a circuit court's decision on appeal, "we view the evidence in the light

most favorable to the prevailing party, granting [him] the benefit of any reasonable inferences."

*Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255,

258 (2003)).

        Husband and wife married in 1981 and separated in 2012.  In 2018, husband filed for

divorce based on having lived separate and apart from wife for more than one year.  Wife filed a

counterclaim, seeking spousal support and a divorce for desertion or having lived separate and apart

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

from husband for more than one year.  Wife later withdrew her desertion claim, and the circuit court dismissed wife's counterclaim and granted a divorce based on the parties' separation.

At trial, the parties litigated equitable distribution and spousal support issues.  At the time of separation, husband had 24 days of unused leave at his United States Postal Service ("USPS") job.  While the case was pending, husband voluntarily left that job, where he had earned $71,062.75 in wages in 2021.  Around the same time, husband started his own business selling nocks for arrows through a retailer.  The business grossed $22,389.11 in the second half of 2021, but the gross receipts did not reflect husband's actual profit after paying royalties to the retailer, buying supplies, and paying bills.  In 2022, the business lost $500, so husband planned to close it.  Husband had paid $951.87 in legal fees from the business account.  He had monthly personal living expenses of $1,549, a pension through USPS, and a Thrift Savings Plan ("TSP") worth $52,708.69.

Wife had numerous medical conditions, her health conditions had required her to leave the workforce in 2009, and she was likely to need surgery at some future point.  Wife had an income of $944 from disability benefits and $7,784.61 in expenses, primarily from medical bills, legal expenses, and credit card debt.  While they were together, the parties had enjoyed a middle-class lifestyle.

Wife testified that in 2016, after experiencing rent increases on her apartment, she determined that it would be "more economical" for her to purchase a house.  But as husband testified, wife could not afford the home, although "on my stuff, I could afford it.  So would I put the mortgage in my name for [her] to get it."  Husband alone guaranteed the mortgage, although the purchased property was initially titled in the names of both husband and wife.  By the time of trial, however, husband had transferred his interest to wife and his name no longer appeared on the deed.  But the mortgage on the property remained solely in husband's name.  Wife had been responsible for making all the monthly mortgage payments since the purchase, and husband disclaimed any

interest in the property. Husband testified that wife occasionally made late mortgage payments; at one time, the bank called him and said wife was two months behind and that if she did not "make it, they'll foreclose on it."

In a March 21, 2023 letter opinion, the circuit court found that husband had made most of the monetary contributions to the marriage by working at the USPS, and wife had made most of the nonmonetary contributions managing the household. Considering those factors and others, the circuit court awarded wife 37.6% of husband's USPS pension and ordered husband to pay half of the balance of his TSP and half of the value of his unpaid USPS leave to wife. In determining spousal support, the circuit court considered all the factors under Code § 20-107.1(E), including husband's ability to pay, wife's need, the couple's previous lifestyle, and its equitable distribution award. Based on his employment with USPS, the circuit court determined that husband had $6,398 in monthly income. It granted wife $1,600 monthly in spousal support, and offset the award by requiring a 37.6% distribution to wife from husband's USPS pension.

The circuit court also addressed wife's current residence in its letter opinion. It noted that "due to [wife's] poor credit score," the home had been purchased with husband's assistance; husband's name had been removed from the deed in 2021, but he "remain[ed] on the mortgage," although "he ha[d] not contributed financially to the home." The circuit court found that husband's name was to "be removed from the mortgage, and [wife] shall refinance the mortgage within 90 days of the entry of the Final Decree."

The circuit court entered a final decree of divorce on February 9, 2024, which incorporated by reference the findings contained in its prior letter opinion. In its decree, the circuit court also found that because husband had disclaimed any interest in wife's residence, it was "treat[ing] that property as [wife's] separate property." The circuit court made no determination of the nature of the mortgage debt and considering whether that debt was separate, marital, or hybrid. Wife objected to

the final decree, arguing that the circuit court erred in its spousal support award and in requiring her "to refinance, and not merely to assume, a debt (mortgage loan) only in [husband's] name." Acting *pro se*, wife also moved the circuit court to reconsider. The circuit court did not rule on wife's motion.

This appeal followed.

## II. ANALYSIS

### A. Mortgage Refinancing

Wife argues that the circuit court erred by requiring her to refinance, rather than simply assume, the mortgage on her home that was guaranteed solely by husband.[1] She contends that under Code § 20-107.3(C), the circuit court lacked the authority to order refinancing of the debt.

On review, a circuit court's "equitable distribution award will not be overturned unless the [appellate court] finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (alteration in original) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)).

The equitable distribution statute, Code § 20-107.3, requires a circuit court to classify the property of divorced parties as marital, separate, or hybrid property. It likewise requires the circuit court to "determine the nature of all debts of the parties, or either of them, and shall

---

[1] Wife also assigns error to the circuit court for requiring her to refinance the home mortgage "where [husband's] discovery obstruction escalated the costs of attorney's fees exponentially, effectively preventing [wife] from being able to qualify to refinance the debt." But this argument was only presented to the circuit court in wife's motion for reconsideration, which, as noted above, was never ruled on by the court. Wife has thus waived her "discovery obstruction" argument. *See Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) (noting that where the appellant "did not obtain a ruling from the trial court on his . . . motion," there was "'no ruling for [this Court] to review' on appeal," and thus the appellant's argument was waived under Rule 5A:18 (second alteration in original) (quoting *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993))); Rule 5A:18.

consider which of such debts is separate debt and which is marital debt." Code § 20-107.3(A). The statute defines both "[s]eparate debt" and "[m]arital debt," and provides mechanisms for determining whether either type of debt may have been transmuted into hybrid debt. Code § 20-107.3(A)(4) and (5). And Code § 20-107.3(C) provides both limits on the circuit court's ability to "order the division or transfer of . . . separate or marital debt, which is not jointly owned or owed," and authority for the court to "apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage." But the touchstone for effectuating an equitable distribution under the statute is the classification and determination of property and debts.

"Where an equitable distribution award is appropriate, then *all* of the provisions of Code § 20-107.3 must be followed," including the determination of legal title, ownership, and value of the parties' property and the nature and amount of the parties' debts. *Stumbo v. Stumbo*, 20 Va. App. 685, 692 (1995) (emphasis added) (quoting *Artis v. Artis*, 4 Va. App. 132, 136 (1987)); *see also Andrews v. Creacey*, 56 Va. App. 606, 630 (2010). "This determination must go beyond mere guesswork," *Artis*, 4 Va. App. at 136, because "[t]he requirements of subsection[] A . . . are fundamental to the analyses which the trial judge must engage when making [equitable distribution] decisions under the statute." *Gamble v. Gamble*, 14 Va. App. 558, 579 (1992) (Benton, J., concurring). "Thus, when property is acquired, and, similarly, when debt is incurred, a trial court must . . . classify [it] as marital or separate." *Stumbo*, 20 Va. App. at 692-93; *cf. Kaufman v. Kaufman*, 7 Va. App. 488, 495 (1988) (noting that the circuit court "first must classify . . . property as separate or marital property" before it is then "authorized 'to make an *equitable distribution*'" (quoting *Smoot v. Smoot*, 233 Va. 435, 441 (1987))).

Here, after the parties separated, husband assisted wife in purchasing a home by obtaining the mortgage for the home in his name. The circuit court classified the home "as

[wife's] separate property" but did not classify husband's mortgage debt. Nonetheless, it proceeded to transfer that debt to wife, ordering that husband's "name shall be removed from the mortgage, and [wife] shall refinance the mortgage." By transferring a debt without first classifying that debt, the circuit court failed to follow "all of the provisions of Code § 20-107.3" that "must be followed." *Andrews*, 56 Va. App. at 630 (quoting *Artis*, 4 Va. App. at 136); *see also* Code § 20-107.3(A)(ii) (stating that the circuit court "shall determine the nature of all debts of the parties, or either of them, and shall consider which of such debts is separate debt and which is marital debt"); *Bland-Henderson v. Commonwealth*, 303 Va. 212, 219 (2024) (noting that "[w]hile a 'shall' command [in a statute] can be described as either mandatory or directory, this technical distinction does not . . . change the requirement that the individual addressed obey the command"). And by failing to follow the required provisions of Code § 20-107.3, the circuit court misapplied the equitable distribution statute. Accordingly, we reverse and remand for the circuit court to make a proper determination of the classification of the mortgage debt and further consider equitable distribution, guided by Code § 20-107.3.[2] *See, e.g.*, *Stumbo*, 20 Va. App. at 692-94 (holding that where the circuit court "did not make the necessary findings under Code § 20-107.3 to determine which assets and debt were marital and separate, the values thereof, and the rights and equities of the parties in the properties and debts," the Court could not rule on the propriety of the equitable distribution award).

---

[2] Because we resolve this matter on these grounds, we do not reach the primary issue wife raises on appeal: whether the circuit court "exceed[ed] i[t]s jurisdiction" by ordering that she "refinance a debt obligation solely in [husband's] name and transfer it into her name . . . in derogation of the plain meaning of . . . Code § 20-107.3(C)"; *see also* Code § 20-107.3(A)(4) and (A)(5) (providing for classification of debt as marital or separate and also providing mechanism by which a circuit court may "designate [separate] . . . debt as marital").

B. Spousal Support

Wife argues that the circuit court abused its discretion by awarding her only $1,600 per month in spousal support, when husband "produced no . . . evidence showing his needs and inability to pay [her] proven expenses" and where "the evidence showed he could pay more."[3]

"Virginia's statutory scheme requires the circuit court, in determining whether to award spousal support, to consider the 'provisions made with regard to the marital property under [Code] § 20-107.3' in effecting an equitable distribution of the marital estate." *Dixon*, 71 Va. App. at 722 (quoting Code § 20-107.1(E)(8)). "A monetary award is a component of equitable distribution and thus a required consideration in determining spousal support." *Id.*; *see also* Code § 20-107.1(E)(8) (requiring the circuit court, in making its spousal support determination, to consider "[t]he provisions made with regard to the marital property under [Code] § 20-107.3"). Here, as part of its equitable distribution of the parties' property, the circuit court ordered husband to pay wife half the value of his TSP and half the value of his unused USPS leave. It also stated that it reached its spousal support award after "consider[ing] all the statutory factors," including "[wife's] need, [husband's] ability to pay, and this [c]ourt's ruling regarding equitable distribution." Thus, the circuit court's spousal support award was conditioned, in part, on its equitable distribution ruling. "Accordingly, our ruling reversing the equitable distribution award and remanding the case for additional proceedings requires that the circuit court, on remand, also revisit the award of spousal support in order to make any necessary adjustments."[4] *Dixon*, 71 Va. App. at 722.

---

[3] Wife also assigns error to the circuit court for "reducing the amount of its spousal support award dollar-for-dollar by the amount of [her] share . . . of [husband's] pension." But like the "discovery obstruction" argument discussed above in n.1, this argument was only presented to the circuit court in wife's motion for reconsideration, which was never ruled on by the court. Wife has thus waived her spousal support reduction argument. *See Williams*, 57 Va. App. at 347; Rule 5A:18.

[4] As a result of this holding, we do not reach the merits of wife's argument that the circuit court abused its discretion in awarding her only $1,600 per month in spousal support. Nor do we

### III.  CONCLUSION

For the foregoing reasons, we reverse and remand the circuit court's equitable

distribution and spousal support awards for further consideration consistent with this opinion.

*Reversed and remanded.*

---

reach the merits of wife's argument that the circuit court erred in failing to rule on her motion for reconsideration and attached exhibits.