COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


WAYNE O. LEAKE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0737-09-4              JUDGE ROSSIE D. ALSTON, JR.
                                                          MARCH 30, 2010

SUSAN J. TAYLOR


                FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                            Burke F. McCahill, Judge

            Walter C. Jacob (Walter C. Jacob, P.C., on brief), for
            appellant.

            Thomas K. Plofchan, Jr. (Westlake Legal Group, on brief), for
            appellee.


        Wayne O. Leake (husband) appeals from a final decree of divorce (final decree),

terminating the marriage between husband and Susan J. Taylor (wife).  Husband contends the

circuit court committed a number of reversible errors.  First, husband maintains the circuit court

erred in denying husband's motion to dismiss a second appeal to the circuit court from the

juvenile and domestic relations district court of a spousal support award on *res judicata* grounds.

Second, he argues the circuit court erred in granting an award of spousal support retroactive to

January 1, 2009, in the amount of only $2,000 per month to husband, when husband requested

spousal support in the amount of $6,000 per month.  Third, husband contends the circuit court

erred in failing to include in the monetary award proceeds from the refinancing of the marital

home, proceeds from the sale of two out-of-state properties, and the reduction in the lien on the

marital home that occurred during the parties' marriage.  Fourth, husband argues the circuit court

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

erred in failing to consider the ownership of two vehicles when determining the equitable distribution. Fifth, husband maintains the circuit court erred in refusing to find a valid gift of the marital home and personal property from wife to husband. Sixth, husband contends the circuit court erred in denying husband's request for a divorce *a mensa et thoro* and granting instead a divorce *a vinculo matrimonii* to wife. Seventh, husband argues the circuit court erred in refusing husband's request for attorney's fees. Finally, both parties request an award for appellate attorney's fees and costs. For the reasons that follow, we affirm the circuit court's decision as to each of the questions presented, deny husband's request for appellate attorney's fees, and deny wife's request for appellate attorney's fees.

## I. BACKGROUND[1]

We view the evidence, and all reasonable inferences flowing from the evidence, in the light most favorable to wife as the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).

Husband and wife married on April 3, 2004. At the time of their marriage, they were in their late forties and had lived together for six months. Husband's twelve-year-old daughter from his previous marriage also lived with the parties. Husband and wife enjoyed a high standard of living as a result of wife's substantial income.

At trial, husband testified that the couple's marital problems began in September 2005, seventeen months after they wed. He stated that wife had been receiving death benefits from her

---

[1] As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

former husband's pension account with the Office of Program Management (OPM). In September 2005, OPM informed wife that the death benefits terminated upon her remarriage, and she had to repay the improperly distributed death benefits. Shortly thereafter, husband claimed wife demanded an annulment of the parties' marriage and presented him with a property settlement agreement. Husband refused to sign either of the documents. Thereafter, husband and wife lived separately under the same roof, but not without conflict. To illustrate these circumstances, wife testified that both parties regularly changed the locks on the marital home's doors to inconvenience one another.

Wife filed a bill of complaint for divorce on October 21, 2005, in which she alleged cruelty and constructive desertion on husband's part as the grounds for divorce. Husband filed a cross-complaint alleging cruelty, willful desertion, and constructive desertion on wife's part as the grounds for divorce. Wife subsequently made a motion for a *pendente lite* award granting wife exclusive use and possession of the marital residence. The circuit court denied her motion.

A trial on the divorce actions was scheduled for November 2006. At that time, both parties nonsuited their claims against each other.

On February 23, 2007, wife executed a deed of gift, which purported to convey the marital residence, which was titled in her name alone and acquired prior to the parties' marriage, and the tangible personal property in the residence to an irrevocable trust for the benefit of wife's mother and sister. Thereafter, husband filed a complaint to set aside the deed of gift on the house as fraudulent. The circuit court set aside the deed of gift on the house, but did not address the conveyance of the personal property, as husband failed to ask that the conveyance of the personal property be voided. A final order reflecting the circuit court's determination was entered on July 2, 2008.

On April 16, 2007, husband filed a petition for spousal support in the juvenile and domestic relations district court. The juvenile and domestic relations district court heard the matter on February 28, 2008, and on March 3, 2008, prior to the entry of the written order, wife noted her appeal of the court's decision. The juvenile and domestic relations district court entered *its written order* on April 18, 2008, which contained the following findings of fact: Wife had an income of over $20,000 per month; husband had an earning capacity of zero; the standard of living in the marriage was high; the duration of the marriage was short; wife moved out of the marital residence on February 15, 2006; wife suffered from Stage IV non-Hodgkin's lymphoma; wife made all of the financial contributions to the family; and neither party contributed to the attainment of education, career or profession of the other. The juvenile and domestic relations district court ordered wife to pay husband $6,000 per month in spousal support, retroactive to April 16, 2007. She received a credit for $4,780 per month retroactive to April 16, 2007. This figure equaled the marital residence's mortgage, which wife had been paying. The court stated that when husband vacated the marital residence, wife would no longer receive the mortgage credit, and she was obligated to pay husband the full $6,000 per month in spousal support. The juvenile and domestic relations district court calculated an arrearage from April 2007 to April 2008 of $4,244. Wife subsequently appealed the written April 18, 2008 spousal support order within ten days of its entry and filed an appeal bond within thirty days of the entry of the written order.[2]

On June 6, 2008, the circuit court dismissed the appeal filed by wife on March 3, 2008, finding the appeal was not timely filed and no appeal bond was posted.

---

[2] As discussed below, wife's appeal of the spousal support award was heard by the circuit court at the same time the court considered the parties' divorce proceedings.

In July 2008, wife stopped paying the utility bills for the marital residence, husband moved out of the marital residence, and wife began paying husband $6,000 per month in spousal support, pursuant to the juvenile and domestic relations district court order.

On October 20, 2008, husband filed a motion in the circuit court to dismiss wife's second appeal on *res judicata* grounds. He argued the circuit court had previously dismissed the March appeal of the spousal support oral ruling, and that decision controlled the circuit court's consideration of the second appeal. The circuit court denied husband's motion to dismiss.

In the meantime, wife initiated a second divorce proceeding on March 12, 2008. She alleged that the parties lived separately under the same roof beginning on November 4, 2005, and that the parties physically separated on February 14, 2006, when wife physically left the marital residence due to concern for her safety. Wife requested a divorce *a vinculo matrimonii* based on a separation of one year. Husband filed a cross-complaint for divorce *a mensa et thoro* on cruelty and desertion grounds.

The parties' divorce actions were originally scheduled for two hearing days; instead, the circuit court heard four days of testimony and argument. During the four-day trial, husband testified that when he and wife married, wife instructed him that he needed to dispose of the house he owned with his father, as well as all of its contents. Husband alleged that wife told him that he would no longer need them because everything she owned was now husband's property. Husband testified that he sold the home he owned with his father and gave away or threw away virtually all of his personal property. In this regard, husband testified that wife would not even allow his daughter to bring her bedroom furniture to the parties' marital home, because it was not needed. Husband testified that wife was present when husband disposed of his property and that others were present when wife discussed the fact that all of her property now belonged to husband. Husband stated that when his daughter and a friend asked wife for permission to use

the marital residence's hot tub, wife directed them to husband, explaining that since all of wife's possessions were now husband's possessions, they should obtain husband's permission. Husband also testified that wife said that half of everything she owned was husband's upon their marriage. Alternatively, husband testified that all of the property in the marital home belonged to him, not because wife gave him the property, but because she abandoned it when she vacated the marital home in February 2006.

Husband's daughter and her friend also testified. They corroborated husband's testimony that wife had made various statements about his ownership of wife's property, although in some instances, the girls could not remember wife's precise words.

Andrea Swaringen, daughter's mother and husband's former spouse, was present when husband moved out of the home he owned with his father and disposed of his possessions. During the move, wife stated several times that husband did not "need all this junk," because everything she owned was now husband's property. Wife gave Swaringen a tour of the parties' home, room by room, and said, "Isn't everything nice? [Husband] now owns a lot of nice stuff. It's now all his."

Husband further testified that after the parties separated, wife engaged in marital waste by conveying all of her personal property to the irrevocable trust and decreasing her bank account from $100,000 to $15. He explained that wife's bank accounts were frozen during the first divorce proceedings, and after those suits were nonsuited, wife spent the money for her own personal benefit, to pay off her personal credit card bills.

Husband offered conflicting evidence regarding his employment history. Husband testified that prior to meeting wife, he managed his father's print shop, but that he stopped working at wife's request around the time the parties met. Conversely, husband admitted that in September 2004, five months after the parties wed, he was still employed, and earning enough

income to pay for the household expenses, utilities, healthcare insurance, and other healthcare costs. Interestingly, husband also testified that he stopped working in July 2006, four months after the parties physically separated and more than two years after they wed in April 2004.

When pressed by wife's counsel as to why he had not obtained employment since the parties' separation over two years earlier, husband stated that he was fifty-five years old and considered himself to be retired. He testified that he had no marketable skills and had done nothing to acquire skills to further employment because he had been "without resources to do anything," and was hindered by poor health. Husband testified that he suffered from nerve damage, high cholesterol, high blood pressure, and a heart condition.

Husband claimed that from August 2008 to November 13, 2008, he incurred over $70,000 in attorney's fees. When wife's counsel asked how he paid his attorney, husband refused to answer. Curiously, he also claimed he did not know when his father passed away, even though it was only months before trial. Husband did not produce an attorney's fee affidavit or bill, but claimed that he saw one that indicated he owed approximately $45,000.

Husband's mother testified that after the parties separated, husband and his daughter lived in her home, and husband paid his mother $2,500 per month for rent. According to his mother, he also paid a share of the utility bill, and gave his mother $400 per month for food. Husband corroborated his mother's testimony.

Wife testified she had four Wachovia bank accounts during the parties' marriage. She stated that when the first divorce proceedings were nonsuited in November 2006, she paid bills using $60,000 from a Wachovia high performance money market account. She also testified at trial that she received $74,467 from the sale of a residence she separately owned in Colorado (Colorado property). She also received $76,718 from the sale of a residence she separately owned in New Jersey (New Jersey property). She argued the proceeds from these sales were not

commingled with marital funds. According to wife, when she refinanced the marital residence, she received $82,000, which she placed into one of the parties' joint checking accounts. Wife also alleged that when she returned to the marital residence in August 2008, after husband vacated in July 2008, most of the tangible personal property, which she had purchased with the proceeds from the sale of the Colorado and New Jersey properties and had left in the home when she vacated, was missing.

Both parties agreed at trial that the Ford F-150 truck, valued at $15,000, and the Jaguar vehicle, valued between $20,000 and $25,000, were hybrid property and that the parties had used marital funds to pay off the vehicle loans.

On January 9, 2009, the circuit court issued a twenty-three-page letter opinion, outlining the court's factual findings and providing a detailed analysis. The circuit court recognized that there was a great deal of conflicting evidence regarding the circumstances and factors that contributed to the dissolution of the marriage. To that end, the circuit court stated,

> The only thing that is clear from this evidence is that this was a very short and unhappy marriage between two determined individuals. To avoid backing down they have been engaged in continued litigation. In addition, while there are grains of truth in their stories, I do not believe either has really been forthcoming in terms of their individual role in the breakup of the marriage. I believe they both share responsibility but I am unable to determine the precise degree.

The circuit court noted that the parties also presented conflicting evidence regarding the other questions before the circuit court. It stated that the

> credibility of witnesses and more significantly, the parties, is a significant concern and problem. Both parties did not seem to be forthcoming in discovery. There were numerous attempts at impeachment. In many instances their individual testimony was inconsistent, not believable, or couched in a fashion designed to advance their strategic objectives. [The circuit court] often had to disregard testimony that was not believable.

The circuit court granted a divorce *a vinculo matrimonii* on grounds of one-year separation to wife. The circuit court found that husband "did not offer sufficient evidence or any corroboration on his counter complaint" that supported his request for a divorce *a mensa et thoro*. Husband had argued that the circuit court could grant a divorce *a mensa et thoro* by "utilizing the corroborative evidence offered by . . . wife in her case in chief." The circuit court declined to do so, further opining, "Even if I did find for the husband, his claim for an *a mensa et thoro* divorce would be mooted by the finding that wife . . . established grounds for an *a vinculo* divorce."

The circuit court granted husband a monetary award of $6,000, and forty percent of two 401K accounts containing approximately $36,000. It considered *de novo* wife's appeal of the juvenile and domestic relations district court award of $6,000 per month in spousal support and awarded husband spousal support of $2,000 per month effective January 1, 2009, but for a defined duration "equal to the number of months of marriage (20) through the date of separation. This [was] in addition to the support he . . . received to date." Finally, it denied both parties' requests for attorney's fees. The circuit court's factual findings and legal conclusions are further discussed below.

## II. ANALYSIS

### 1. Consideration of the Appeal from the Juvenile and Domestic Relations District Court

On appeal, husband maintains the circuit court erred in denying husband's motion to dismiss wife's appeal of the juvenile and domestic relations district court's spousal support award on *res judicata* grounds. He contends that the June 2008 dismissal of wife's March 2008 notice of appeal, which was filed prior to the entry of the written order in April 2008, precluded the trial court from considering an appeal of the written order. Husband argues that <u>Sharma v.</u>

<u>Sharma</u>, 46 Va. App. 584, 620 S.E.2d 553 (2005), mandated the dismissal of the appeal of the spousal support award to the circuit court.

In <u>Sharma</u>, the husband appealed a child support ruling, which held that he owed his wife child support arrearages of $694.27. <u>Id.</u> at 586-87, 620 S.E.2d at 554. The court clerk completed the appeal bond portion of the notice of appeal form and set the appeal bond at "0." <u>Id.</u> at 587, 620 S.E.2d at 554-55. The circuit court dismissed the appeal because the husband failed to post an appeal bond pursuant to Code § 16.1-296(H), which states in pertinent part:

> No appeal bond shall be required of a party appealing from an order of a juvenile and domestic relations district court except for that portion of any order or judgment establishing a support arrearage or suspending payment of support during pendency of an appeal. In cases involving support, no appeal shall be allowed until the party applying for the same or someone for him gives bond, in an amount and with sufficient surety approved by the judge or by his clerk if there is one, to abide by such judgment as may be rendered on appeal if the appeal is perfected or, if not perfected, then to satisfy the judgment of the court in which it was rendered.

<u>Id.</u> at 594, 620 S.E.2d at 558.

On appeal to this Court, the husband argued in <u>Sharma</u> that the circuit court erred because the clerk set a bond of "0," and he complied with Code § 16.1-296(H) by paying the bond set by the clerk. <u>Id.</u> at 589, 620 S.E.2d at 556. Alternatively, he argued that the circuit court should have allowed him to correct the deficient bond by paying additional security pursuant to Code § 16.1-109. <u>Id.</u> at 593, 620 S.E.2d at 558.

This Court held that an appeal bond of zero dollars did not fulfill the purpose of an appeal bond, which was to assure that any judgment rendered on appeal would be satisfied. <u>Id.</u> at 589-90, 620 S.E.2d at 556. Furthermore, it was the husband's responsibility to ensure the clerk set the correct bond, and the husband's failure to do so divested the circuit court of jurisdiction. <u>Id.</u> at 590, 620 S.E.2d at 556 (citing <u>Commonwealth ex rel. May v. Walker</u>, 253 Va. 319, 322,

485 S.E.2d 134, 136 (1997)). Finally, this Court held that a bond of "zero" constituted a failure to post the required bond, rather than the posting of a deficient bond, and therefore it was a jurisdictional defect that could not be cured by Code § 16.1-109. Id. at 594, 620 S.E.2d at 558.

In the instant case, husband argues that when the circuit court dismissed wife's March 2008 notice of appeal, the dismissal was dispositive regarding further appeals of the juvenile and domestic relations district court decision. He maintains that the circuit court erred in denying his motion to dismiss the appeal of the spousal support award on the basis of *res judicata*. We disagree.

"'*Res judicata* literally means a "matter adjudged," and it precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction.'" Highsmith v. Commonwealth, 25 Va. App. 434, 439, 489 S.E.2d 239, 241 (1997) (quoting Commonwealth ex rel. Gray v. Johnson, 7 Va. App. 614, 617-18, 376 S.E.2d 787, 788 (1989)). A final determination on the merits is "'a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.'" Storm v. Nationwide Mut. Ins. Co., 199 Va. 130, 134, 97 S.E.2d 759, 761 (1957) (quoting 50 C.J.S. Judgments § 172). "A dismissal of a cause of action may constitute a judgment on the merits depending upon the grounds upon which such dismissal is based." Highsmith, 25 Va. App. at 440, 489 S.E.2d at 242 (quoting 8B Michie's Jurisprudence, Former Adjudication or Res Judicata § 12 (1996)).

In June 2008, the circuit court dismissed wife's March 2008 notice of appeal of the juvenile and domestic relations district court's oral ruling, because it was filed prior to the entry of the written order and unaccompanied by an appeal bond as required by Code § 16.1-296(H). The dismissal of the March 2008 appeal was not a decision as to the respective rights and

liabilities of the parties, nor was it based on the ultimate fact or state of facts disclosed by the pleadings or evidence. Therefore, the dismissal of the March 2008 notice of appeal was not a judgment on the merits of the case, and the doctrine of *res judicata* would not apply to the circuit court's subsequent decision to hear the appeal of the spousal support award.

We would note that in April 2008, the juvenile and domestic relations district court entered the written order, and wife's March 2008 appeal of the oral ruling actually became effective. Saunders v. Commonwealth, 12 Va. App. 154, 155, 402 S.E.2d 708, 709 (1991) ("The premature notice of appeal filed after oral pronouncement of judgment became effective when the final order was written and entered by the court.").

Our Supreme Court has cited the United States Supreme Court with approval when discussing the premature filing of notices of appeal: "'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.'" Id. at 155, 402 S.E.2d at 708 (quoting Lemke v. United States, 346 U.S. 325, 326 (1953)). The requirement that the notice of appeal be filed in a timely manner affords the opposing party an ample opportunity to appropriately prepare for appeal. See Skeens v. Commonwealth, 192 Va. 200, 203, 64 S.E.2d 764, 766 (1951). Here, the overall statutory purpose was not undermined by wife's premature filing of notice of appeal in March 2008.

Additionally,

> "[t]he policy underlying the requirement of appeal bonds is clear. An appeal bond provides assurances that any judgment that may be rendered on appeal, if perfected, will be satisfied. Such bonds also provide assurances in cases in which an appeal is not perfected that the judgment of the court in which it was rendered will be satisfied."

Sharma, 46 Va. App. at 589-90, 620 S.E.2d at 556 (quoting Mahoney v. Mahoney, 34 Va. App. 63, 67-68, 537 S.E.2d 626, 628 (2000)) (internal citations omitted).

- 12 -

We repeatedly have held that "[the] failure to substantially comply with the statutory requirements applicable to appeal bonds constitutes a jurisdictional defect which cannot be corrected after the expiration of the time within which an appeal may be taken." Parker v. Prince William County, 198 Va. 231, 235, 93 S.E.2d 136, 139 (1956); accord Ness v. Manuel, 187 Va. 209, 212, 46 S.E.2d 331, 332 (1948); [The Covington Virginian v.] Woods, 182 Va. [538,] 548, 29 S.E.2d [406,] 411 [(1944)]; Southern Ry. Co. v. Thomas, 182 Va. 788, 795, 30 S.E.2d 575, 578 (1944); Forrest v. Hawkins, 169 Va. 470, 477, 194 S.E. 721, 723 (1938); Clinch Valley Lumber Corp. v. Hagan Estates, 167 Va. 1, 4-5, 187 S.E. 440, 441-42 (1936); Brooks v. Epperson, 164 Va. 37, 43, 178 S.E. 787, 789 (1935).

Walker, 253 Va. at 322, 485 S.E.2d at 136. Here, the record shows that wife filed the appeal bond within thirty days of the entry of the written order, as required by Code § 16.1-296(H). Thus, the appeal bond was timely filed.

Having concluded that the procedural dismissal of the March 2008 notice of appeal was not *res judicata* to the ability of the circuit court to hear wife's appeal on the merits, the determination of the circuit court to reference wife's appeal of the written order, as the appropriately perfected appeal, rather than the March 2008 notice of appeal, is of no legal significance, because we cannot say that husband's substantial rights were affected. He received proper notice of the appeal and had an opportunity to prepare his case in opposition, and his arrearage award was protected by the filing of the timely appeal bond.

2. Spousal Support Award

Next, husband argues that the circuit court erred in awarding spousal support of $2,000 per month for twenty months, retroactive to January 1, 2009, rather than affirming the juvenile and domestic relations district court. He further contends the circuit court erred by limiting the duration of his spousal support award to twenty months, when there was no evidence that husband's need would decrease in the future.

- 13 -

"Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (*en banc*)). When determining the spousal support award, the circuit court "'must consider all the factors enumerated in Code § 20-107.1(E),'" Fadness v. Fadness, 52 Va. App. 833, 846, 667 S.E.2d 857, 863 (2008) (quoting Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005)), and set forth "findings or conclusions identifying the [Code § 20-107.1(E)] factors . . . that support the spousal support award," Robinson v. Robinson, 50 Va. App. 189, 196, 648 S.E.2d 314, 317 (2007). When the circuit court has duly considered the Code § 20-107.1(E) factors, "its determination 'will not be disturbed except for a clear abuse of discretion.'" Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998) (quoting Dodge v. Dodge, 2 Va. App. 238, 246, 343 S.E.2d 363, 367 (1986)). Our standard for establishing such error is a showing that the court's exercise of its broad discretion was "'plainly wrong or without evidence to support it.'" Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (quoting Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997)).

In the instant case, the circuit court was confronted with the task of making a spousal support determination. While this matter was an appeal from the juvenile and domestic relations district court, it was a *de novo* determination. The circuit court discussed the factual findings it made regarding each of the Code § 20-107.1(E) factors in its letter opinion, and it discussed some of the factors at great length. Initially, the circuit court found that husband failed to provide credible evidence as to the amount of his actual need. The circuit court also noted that husband lived with his daughter rent-free in the marital residence from February 2006 to July 2008. Upon leaving the marital residence in July 2008, he received $6,000 per month in spousal support. The circuit court did not find husband's claim that he paid his mother $2,500 per month

for rent and utilities and $400 for food to be credible. Husband testified that he owed his father's estate $400,000; he claimed he borrowed these funds to pay his attorney's fees. He also claimed to have a $75,000 loan against a vehicle that was his separate property. The circuit court found that there was no evidence to support these claims. Finally, the circuit court also noted that the fact that husband did not provide an income and expense sheet made it difficult to determine his support need.

In its letter opinion, the circuit court also discussed at length husband's earning capacity and employment opportunities. During the marriage, husband was employed at his father's printing shop where he ran the printing press and maintained the books. Husband referred to this job as "a thing of the past." Prior to the marriage, he had also worked as a computer network engineer but was not certified. Limited evidence was provided as to husband's past earnings, although the evidence did show that he earned $3,500 in 2006. After the separation, husband quit his job and made no effort to obtain further employment. He had no income in 2007 and 2008. He claimed that he was "retired," and stated that he did not have the resources to obtain skills needed for employment and that his poor health affected his ability to get a job. Husband did not present any evidence, other than his own testimony, regarding his health problems. Wife presented no evidence regarding his employment prospects or his heath.

The circuit court specifically found that husband was "purposely not seeking employment." Relying on Baytop v. Baytop, 199 Va. 388, 394, 100 S.E.2d 14, 18-19 (1957), the circuit court concluded husband "ha[d] an obligation to earn as much as he reasonably [could] to reduce the amount of the support need." The circuit court further stated that husband "has little incentive to seek work based on the structure of the Juvenile and Domestic Relations court order. He was employed during the marriage however after the separation has chosen to become 'retired.'" Furthermore, the circuit court found that husband

- 15 -

> ha[d] purposely remained unemployed to pursue his strategy designed to take advantage of the great disparity in income between the parties and to increase his need. . . . [I]t is inappropriate and not credible to simply claim retirement and no job prospects as a means to increase his prospects for obtaining permanent support. . . . [W]ife . . . continued to work while undergoing chemotherapy for stage four lymphoma during the course of litigation yet . . . husband maintains he is unable to work.

The circuit court also considered wife's ability to provide spousal support. In consideration of this statutory factor, the circuit court found that wife's average monthly gross income was $16,900, which was significantly more than the income that she claimed at trial. Wife claimed her *net* income was much less; however, the circuit court noted that because wife failed to cooperate with discovery, failed to provide the circuit court with multiple years of tax returns, and failed to provide the circuit court with sufficient proof of her business expenses, it was difficult to definitively determine her income. The circuit court also noted that wife's cancer treatments impacted her earning potential.

Further, the circuit court noted that the parties' standard of living was high, but that the short duration of the marriage deserved consideration, especially given that the duration of the parties' divorce litigation surpassed the length of their marriage. The circuit court found that wife made most of the monetary and non-monetary contributions to the marriage. It further found that wife made many payments post-separation that directly benefited husband and his daughter, such as the mortgage, utilities, and support payments. Additionally, the circuit court found that each party made negative non-monetary contributions to the well-being of the family.

Our jurisprudence commands that great deference be given to the circuit court's factual findings, for "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citing Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985); Carter v.

- 16 -

Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)). Thus, in the instant case, we are bound by the circuit court's factual findings unless they are "plainly wrong or without evidence to support them." Collins v. First Union Nat'l Bank, 272 Va. 744, 749, 636 S.E.2d 442, 446 (2006) (citing Forbes v. Rapp, 269 Va. 374, 379-80, 611 S.E.2d 592, 595 (2005)).

Husband argues that the circuit court erred by limiting his spousal support award to $2,000, when his need was much greater. He cites Thomas v. Thomas, 217 Va. 502, 229 S.E.2d 887 (1976), for the proposition that in a no-fault divorce, if a payee spouse establishes a need for support, and a payor spouse has the ability to provide it, the circuit court has no choice but to award the payee spouse support and maintenance. Furthermore, he argues that under Thomas, if there is no evidence that the payee's need will substantially change in the reasonably foreseeable future, the circuit court may not enter a spousal support award for a limited duration.

Husband's reliance on Thomas is misplaced. First, the "party seeking spousal support bears the burden of proving all facts necessary for an award." Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2006). The circuit court did not find husband's evidence regarding his support need to be credible. Accordingly, husband failed to prove that his need existed. Second, the circuit court specifically found that husband's unemployment was purposeful, and designed to increase his spousal support award. The circuit court's apparent goal in awarding spousal support in this case was to provide husband with rehabilitative spousal support that would provide for his needs while he attempted to obtain employment. The circuit court stated as much in its letter opinion:

> Here I recognize that I could have made this award retroactive because of the appeal, but have chosen not to. As noted, absent a showing of need[,] the [juvenile and domestic relations district court's] $6000 award seems without foundation other than the mortgage and/or a presumptive *pendente lite* guidelines in [Code] § 16.1-278.17:1. In doing this, I have provided an additional term of support to the husband. Further it prevents a substantial arrearage that would wipe out any monetary award and portions of

- 17 -

the current support. . . . This [award] allows the husband to now focus on his future rather than litigation while providing temporary assistance. Obviously he must now focus on becoming gainfully employed.

Given husband's failure to produce credible evidence of his support need, the length of the parties' marriage, husband's purposeful unemployment post-separation, and the parties' monetary and non-monetary contributions during the marriage, this Court cannot say from the record before us that the circuit court's determination of the amount of spousal support or the circuit court's decision to provide spousal support of a defined duration was plainly wrong or without evidence to support it.

### 3. Equitable Distribution - Consideration of Real Estate

The circuit court awarded husband a monetary award of $6,000, and forty percent of two 401K accounts, which contained approximately $36,000. Husband argues on appeal that the circuit court erred in failing to consider $82,000 in proceeds from the refinancing of the marital residence, the reduction in the amount owed on the marital residence's mortgage, $74,467 in proceeds from the sale of the Colorado property, and $76,767 in proceeds from the sale of the New Jersey property, in its determination of the monetary award to husband. Husband claims that all of the funds described above were commingled with marital property, and wasted by wife in anticipation of divorce.

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Furthermore, this Court will not reverse an award "[u]nless it appears from the record that the [circuit court] . . . has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying [the] resolution of the conflict in the equities . . . ." Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987). Also, "'[i]n

- 18 -

determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Moreno, 24 Va. App. at 195, 480 S.E.2d at 795 (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

"In making an equitable distribution, the court must classify the property, assign a value, and then distribute the property to the parties, taking into consideration the factors listed in Code § 20-107.3(E)." Theismann v. Theismann, 22 Va. App. 557, 564, 471 S.E.2d 809, 812 (citation omitted), aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). "The circuit court is [not] required 'to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).

It is important to note that at trial, the trial judge asked husband on multiple occasions what property the court should consider for equitable distribution. Husband asked the court to consider the proceeds from the marital residence's refinancing, tangible personal property within the marital home (some of which was purchased with the proceeds from the sales of the Colorado and New Jersey properties), the marital residence, and the hybrid vehicles.[3] However, husband never asked the court to consider the parties' bank accounts or any other property during the equitable distribution.

The circuit court classified the marital residence as marital property. The circuit court determined the home's fair market value was "$660,000, with a lien balance of $643,250,

---

[3] On brief, husband also asks this Court to find that wife committed waste when, after the first divorce suit was nonsuited, she transferred $60,000 from a high performance money market account to a separate checking account. As husband did not ask the trial court to make a finding of waste in his complaint or closing arguments, this argument is waived on appeal. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court."); see Rule 5A:18.

yielding a 'net' equity of $16,750." The circuit court noted that neither party presented evidence regarding the value of the residence on the date of the marriage, or the lien balance on the date of the marriage. The parties stipulated that wife refinanced the property in July 2005, prior to the parties' separation. The circuit court found that wife increased the lien balance to $670,000 at that time, and received approximately $82,000 in the transaction. Wife placed this money in an account that also contained proceeds from a joint tax return and wife's post-separation earnings. Wife paid bills using funds in this account, although she did not provide detailed information regarding these bills. The circuit court found that husband "did not provide any evidence from which the court could determine the amount of principal paid, if any, by the parties from the date of marriage until the refinance in July 2005." The court held that without that information, it was "unable to determine if any marital property was contributed in the form of a principal reduction from the date of the marriage to the date of the refinance." The court noted that evidence was presented at trial that showed that marital funds were used to pay down the lien after the refinance, and thus the court could consider the marital contribution to the marital residence post-refinance.

Husband argued at trial, and now argues on appeal, that wife committed waste by using the $82,000 garnered from the refinance to pay her bills. The circuit court found that husband, as the non-owning spouse, had the burden of proving the contribution to the marital property and that the premarital asset increased in value. Because he did not do this, the circuit court found that it did not need to address husband's claim that wife committed waste. Further, the circuit court found, "If anything it would appear that this $82,000 should be considered a monetary contribution by the wife under [Code] § 20-107.3E, as it is cash from her separate asset."

The circuit court also found that wife made payments with her marital earnings after the refinance that reduced the principal balance on the lien from $670,000 to $643,250, or an amount

- 20 -

equal to $26,750. The circuit court found there was "no evidence of an actual increase in the value of the asset beyond the pay down on the mortgage. It is a reasonable inference that the property has in fact decreased in value because the pay down in principal is $26,750 and yet the net equity is $16,750 at this time. This $16,750 is marital property."

Finally, the circuit court found that proceeds from the sale of the Colorado and New Jersey properties had been used to purchase tangible personal property that husband asked be considered for equitable distribution, despite the fact that neither party knew where the property was located. The circuit court held that it could not place a value on items that did not exist, and valued the only piece of tangible personal property identified at trial at $500.

Husband argues on appeal that the circuit court erred in not considering the proceeds of the sale of the Colorado and New Jersey properties ($74,467 and $76,767, respectively,) in the equitable distribution calculations. In its letter opinion, the circuit court acknowledges that the proceeds of the properties were in a marital account; however, the court did not make specific valuations of the commingled bank accounts, presumably because husband did not ask the circuit court to include the contents of the bank accounts in its equitable distribution calculations. Thus, we will not consider husband's argument on appeal regarding the contents of the bank accounts, as it was not raised in the circuit court. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the circuit court."); see Rule 5A:18.

Given these value determinations regarding the parties' marital property, the trial judge considered each factor provided in Code § 20-107.3(E). Specifically, the circuit court found the marriage was "of brief duration, beginning on April 3, 2004[,] and ending on February 15, 2006." As stated above, the circuit court found that wife made most of the monetary and non-monetary contributions to the marriage; wife made many payments post-separation that

directly benefited husband and his daughter, such as the mortgage, utilities, and support payments; and each party made negative non-monetary contributions to the well-being of the family.

Upon our review of the record, we conclude that the evidence supports the circuit court's factual determinations regarding the classification and value of the marital residence, the proceeds from the marital residence's refinancing, and the proceeds from the sale of the Colorado and New Jersey properties. The circuit court appropriately considered the statutory factors, and its findings regarding the statutory factors were based on credible evidence. Given the duration of the marriage and the parties' monetary and non-monetary contributions to the marriage, the circuit court's decision to award husband a monetary award of $6,000, and forty percent of wife's retirement accounts was not plainly wrong or without evidence to support it.

4. Equitable Distribution – Hybrid Vehicles

The parties agreed that the Jaguar and Ford F-150 were hybrid property. The circuit court found that wife acquired both vehicles prior to the marriage, but marital funds were used to pay down the vehicle loans. The circuit court held that husband, as the non-owning spouse, failed to offer evidence regarding how great the marital contribution was for the vehicles and whether the vehicles increased in value during the marriage. Therefore, the circuit court did not consider these assets in the equitable distribution.

Husband argues that under Code § 20-107.3(A)(3)(a), he satisfied his burden of proof. Code § 20-107.3(A)(3)(a) reads:

> In the case of income received from separate property during the marriage, such income shall be marital property only to the extent it is attributable to the personal efforts of either party. In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such

> personal efforts must be significant and result in substantial appreciation of the separate property.
>
> For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

Husband correctly maintains that the parties stipulated that marital funds were used to pay down the automobile loans. However, he contends that the mere fact that the parties agreed that loan payments were made proves that the equity of the asset increased. Thus, husband argues that he satisfied the Code § 20-107.3(A)(3)(a) mandate that the non-owning spouse proves that "(i) contributions of marital property or personal effort were made and (ii) the separate property increased in value." He therefore contends that wife did not satisfy her burden to prove "that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort."

We disagree with husband and find that he failed to carry his burden to prove that the separate property increased in value. He provided no evidence that the hybrid vehicles increased in value, and such evidence was required to show what portion of the hybrid vehicles' value was marital.

> When the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question. "[T]he burden is always on the parties to present evidence to provide the basis on which a proper determination can be made, and the circuit court . . . must have the evidence before it . . . to grant or deny a monetary award."

Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (quoting Hodges v. Hodges, 2 Va. App. 508, 517, 347 S.E.2d 134, 139 (1986)). Accordingly, the circuit court did not err in declining to consider the hybrid vehicles when determining the equitable distribution award.

5. Equitable Distribution - Gift to Husband

Next, husband argues the circuit court erred in finding that wife did not make a gift to husband of all of her personal property. At trial, husband claimed that wife gifted him the property upon their marriage, and therefore the circuit court should consider it his separate property, or alternatively their marital property. We do not agree with husband on either of these alternative theories of property classification. Husband further argues that wife's conveyance of the property to a trust constituted waste. We also disagree with this contention.

In determining that a valid gift of wife's property did not occur, the circuit court applied the proper test:

> The law does not presume a gift. "Where a donee claims title to personal property by virtue of a gift *inter vivos*, the burden of proof rests upon him to show every fact and circumstance necessary to constitute a valid gift by clear and convincing circumstances." Utsch v. Utsch, 266 Va. 124, 12[8, 581 S.E.2d 507, 508] (2003) [(](q]uoting Rust v. Phillips, 208 Va. 573, 578[, 159 S.E.2d 628, 631] (1968)[)]. The husband must prove donative intent, delivery, and acceptance. Id.

J.A. 702. Accord Theismann, 22 Va. App. at 566, 471 S.E.2d at 813 ("The three elements of a gift are: (1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.").

The circuit court found that husband had not sustained his burden to prove a gift by clear and convincing evidence, as he admitted in his testimony that he was not sure whether wife intended to make a gift of a half-ownership of the property or of full ownership of the property. The circuit court was also troubled because husband alternatively maintained that the personal property in the home belonged to him, not because wife gave it to him, but because she abandoned it when she vacated the marital residence. Additionally, the circuit court stated that "[c]onsideration must be given to the context of a conversation between either an about to be married couple or a newly married couple attempting to decide what items a party is to bring into

- 24 -

the other's residence." The court made the factual determination that wife's statements were merely a way of saying that husband had "free use of and access to the items in [the] already furnished house." Thus, the circuit court found that husband failed to prove donative intent and to what specific items the intent applied. Furthermore, the circuit court disagreed with husband's contention that wife abandoned the tangible property in the home when she left the residence.

Viewing the evidence in the light most favorable to wife, as we must, Congdon 40 Va. App. at 258, 578 S.E.2d at 835, we hold the circuit court was not plainly wrong in concluding that wife did not intend to make a gift of all, or even half, of her personal property to husband. Because we find that wife did not gift her property to husband, we need not address husband's argument that wife committed waste by conveying her separate personal property to the trust. There can be no waste of separate property. See Anderson v. Anderson, 29 Va. App. 673, 694, 514 S.E.2d 369, 380 (1999) (citing Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992)).

### 6. Award of Divorce *A Vinculo Matrimonii*

Husband also argues that the circuit court erred in awarding wife a divorce *a vinculo matrimonii*, and denying husband's request for a divorce *a mensa et thoro*. He contends that the circuit court had authority to award him a divorce *a mensa et thoro* under Code § 20-116,[4] and it was within the circuit court's discretion to do so. Husband alleges that the grounds for a divorce *a mensa et thoro* were fully corroborated by wife's evidence in her case-in-chief and that the

---

[4] Code § 20-116 states,

> In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property. Such decree shall operate upon property thereafter acquired, and upon the personal rights and legal capacities of the parties, as a decree for a divorce from the bond of matrimony, except that neither party shall marry again during the life of the other.

- 25 -

circuit court erred in finding that husband's request was mooted by the circuit court's finding that wife had established grounds for a divorce *a vinculo matrimonii*.

Husband sought a divorce *a mensa et thoro* based on cruelty, willful desertion, and abandonment. Pursuant to Code § 20-99, a divorce shall not be granted "on the uncorroborated testimony of the parties or either of them." Furthermore, "[i]t is well established that 'where dual or multiple grounds for divorce exist, the trial judge can use his sound discretion to select the grounds upon which he will grant the divorce.'" Williams v. Williams, 14 Va. App. 217, 220, 415 S.E.2d 252, 254 (1982) (quoting Lassen v. Lassen, 8 Va. App. 502, 505, 383 S.E.2d 471, 473 (1989)). As it is apparent from the case law that a circuit court may exercise its discretion as to the grounds upon which it grants a divorce, it logically follows that a circuit court may also use its sound discretion to select what "type" of divorce it awards. Husband as much as concedes this point by recognizing in his argument that it was within the *discretion* of the circuit court to grant him a divorce *a mensa et thoro*.

Here, only husband testified to wife's alleged bad acts. Thus, the circuit court did not err in finding that wife's evidence did not corroborate husband's testimony. Because husband failed to provide corroborating evidence of his grounds for divorce, the circuit court did not err in denying him a divorce *a mensa et thoro*. Rather, the record established that the parties lived separate and apart for one year, prior to the filing of wife's complaint for divorce. Accordingly, based upon these facts and circumstances, the circuit court did not abuse its discretion in rejecting husband's argument and awarding wife a divorce *a vinculo matrimonii*.

### 7. Attorney's Fees

The circuit court declined to award husband attorney's fees because he failed to provide sufficient evidence on the issue. The circuit court declined to award wife attorney's fees "based on her income and resources and the overall circumstances and equities in this case."

Furthermore, throughout the litigation the circuit court stated that the parties' disregard for their discovery obligations did not bode well for future attorney's fees requests.

Husband argues the circuit court abused its discretion in failing to consider the testimony of husband, elicited by wife, that his attorney's fees for this case were more than $70,000 from August 2008 to the trial date, that on average he incurred $10,000 per month in legal expenses, and that he saw an attorney affidavit that showed he spent approximately $45,000.

It bears noting that the circuit court heard both the parties' divorce claims and wife's appeal of the juvenile and domestic relations district court's spousal support award. "'An award of attorney's fees to a party in a divorce suit is a matter of the trial court's sound discretion after considering the circumstances and equities of the entire case.'" Fadness, 52 Va. App. at 849 n.4 667 S.E.2d at 865 n.4 (quoting Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987)). "'The key to a proper award of counsel fees [is] . . . reasonableness under all of the circumstances revealed by the record.'" Id. at 849, 667 S.E.2d at 865 (quoting McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)). However, pursuant to Code § 16.1-278.19, a juvenile and domestic relations district court awards attorney's fees "as the court deems appropriate based on the relative financial ability of the parties."

Here, the circuit court found that husband failed to identify the attorney's fees related to the individual suits, and stated that without these figures, it could not review the basis for the fees claimed. Further, the circuit court found that husband's testimony was "vague and not entirely credible regarding his actual liability for attorney's fees." Husband stated that his father paid his attorney's fees prior to his death. He also testified that his father's estate loaned him the money, but he was not able to produce satisfactory evidence regarding the existence of any promissory notes. He also was not able to provide a clear answer as to how he paid his attorney's fees after the death of his father.

Based on the record before this Court, we cannot say that the circuit court abused its discretion in denying husband's claim for attorney's fees. Because husband was not able to provide evidence of the amount of attorney's fees he owed, and because husband engaged in conduct that negatively impacted the trial proceedings, it was not unreasonable for the circuit court to deny husband's request for attorney's fees.

## 8. Appellate Attorney's Fees

Both parties requested appellate attorney's fees. To say that the matters before us on appeal were convoluted would be an understatement. The circuit court highlighted these circumstances in its recognition of the incredibility of the testimony of both parties. Because husband did not prevail in his appeal, we deny his request for attorney's fees. The more difficult question is whether wife should be compensated for the reasonable expenses incurred in defending this appellate litigation. Based upon a review of the record, we find the issues pursued by husband on appeal can be reasonably viewed as addressing "appropriate and substantial issues" and not raised to generate "*unnecessary* delay or expense in pursuit of . . . legitimate interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004) (emphasis added). Accordingly, each of the requests is denied.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

<u>Affirmed.</u>