UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Malveaux and Senior Judge Haley
Argued at Fredericksburg, Virginia

ARNULFO G. GARZA

v.     Record No. 1286-18-4

JANET A. GARZA

MEMORANDUM OPINION* BY
JUDGE JAMES W. HALEY, JR.
DECEMBER 18, 2018

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A. B. Willis, Judge

Robert K. Miller, Jr. (Eamonn Foster; Woehrle Dahlberg Jones Yao,
PLLC, on brief), for appellant.

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellee.

Arnulfo G. Garza (husband) appeals a final decree of divorce. Husband argues that the

circuit court erred by (1) finding that there was sufficient evidence to prove that he deserted Janet A.

Garza (wife); (2) awarding wife both a fifty percent share of husband's Thrift Savings Plan and a

monetary award from a residence husband purchased after the separation, which amounted to a

"double dip" into the account proceeds; (3) finding that wife was entitled to the marital share of

husband's monthly annuity from the Federal Employment Retirement System and failing to

consider the monetary contributions to the well-being of the family, in violation of Code

§ 20-107.3(E)(1); (4) ordering husband to maintain an existing life insurance policy and requiring

him to designate wife as the beneficiary pursuant to Code § 20-108.1(D) and failing to consider

"any of the elements" of Code § 20-107.1:1; (5) violating Code § 20-155 and valuing his Thrift

Savings Plan as of January 1, 2016, "despite the evidence presented by both parties, recorded and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

transcribed by a court reporter and affirmed by the parties on the record personally, that they had reached an agreement to distribute the funds and acted on that agreement;" (6) awarding wife spousal support and imputing income to husband without considering husband's employment history during the marriage, his failing health and its impact on his ability to work, wife's current employment situation and income, and wife's failure to demonstrate a need for spousal support; (7) finding that wife was entitled to fifty percent of husband's Thrift Savings Plan, valued as of January 1, 2016, "without taking into consideration the tax implications of the both-party authorized withdrawal from the Thrift Savings Plan;" and (8) finding that wife was entitled to fifty percent of husband's Thrift Savings Plan and Federal Employment Retirement Service "immediately, without taking into consideration the fact that [wife] will not likely retire for three years." For the reasons stated below, we affirm the circuit court's decision in part, reverse in part, and remand this case to the circuit court for further proceedings consistent with this opinion.

BACKGROUND[1]

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Menninger v. Menninger, 64 Va. App. 616, 618 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258 (2003)).

The parties married on February 1, 1975, and had five children during their marriage. The parties moved frequently during their marriage for husband's work. In 1988 or 1989, wife had an affair, but the parties reconciled and resumed cohabitation. In 1991, they moved to Stafford, Virginia. Husband is a college graduate with a CPA license, and together, husband and

---

[1] Our recitation of the facts is limited to those stated by the circuit court in its ruling from the bench on April 17, 2018. Although appellant timely filed the transcript of the judge's ruling, he filed the trial transcript from the February 12, 2018 hearing late. Accordingly, the February 12, 2018 hearing transcript is not part of the record. Rule 5A:8.

wife owned and operated Dominion Tax Services, which is a franchise of Liberty Tax Services.[2]

Before his retirement, husband also worked for the federal government, where he had a Federal

Employee Retirement System (FERS) account and a Thrift Savings Plan (TSP). Wife works for

the state government, where she has a Virginia Retirement System (VRS) account.

Husband suffered from diabetes and high cholesterol, and he has a heart condition and

three stents. He also has a medical condition that has prevented him from engaging in sexual

relations for fifteen years. In 2016, husband started living in the basement of the former marital

residence. Between July 1 and July 9, 2016, husband moved out of the marital residence. After

briefly living locally, husband subsequently moved to Washington state to live with his former

high school girlfriend in a house that they had bought together.

On September 23, 2016, wife filed a complaint for divorce, to which husband filed an

answer. On January 8, 2018, wife filed a motion for an alternate valuation date for husband's

TSP. She argued that husband withdrew $275,000 from his TSP on or about January 1, 2016,

and then purchased a house with his former high school girlfriend, on or about March 23, 2016,

for $207,000.[3] On February 12, 2018, the parties appeared before the circuit court for a hearing

on the grounds for divorce, equitable distribution, spousal support, and attorney's fees. On April

17, 2018, the circuit court issued its ruling from the bench. The circuit court awarded wife a

divorce on the grounds of desertion. As part of the equitable distribution award, the circuit court

held that the alternative valuation date for husband's TSP was justified and awarded wife

one-half of the value of the account as of January 1, 2016, less the $30,000 that she already

_____

[2] Dominion Tax Services was in wife's name "to avoid ethical conflicts."

[3] Wife originally agreed to husband's withdrawal of funds from his TSP because he told her that he was using the funds "to move his mother into a better facility." However, his mother died, and no funds were spent on her. As part of wife's agreement to husband withdrawing the funds, she wanted to be paid "a certain sum." Although there was some discrepancy over the amount of the "certain sum," husband paid her $30,000.

received. It also ordered husband to pay wife $42,000, which represented one-half of the marital funds used to purchase husband's home in Washington state. Furthermore, the circuit court imputed income to husband and awarded spousal support to wife. It also ordered husband to maintain his existing life insurance policy and designate wife as the beneficiary for so long as he has a spousal support obligation. On May 22, 2018, the circuit court entered the final decree of divorce. On May 29, 2018, husband filed a motion for reconsideration, but he did not obtain an order to stay or suspend the final decree. On June 18, 2018, husband timely noted his appeal. On July 12, 2018, the circuit court entered an order denying husband's motion for reconsideration.

ANALYSIS

*Grounds for divorce*

In his first assignment of error, husband argues that the circuit court abused its discretion in finding that there was sufficient evidence to prove that he deserted wife.

"On appellate review, a divorce decree is presumed correct and will not be overturned if supported by substantial, competent, and credible evidence." Gottlieb v. Gottlieb, 19 Va. App. 77, 83 (1994).

A trial court may award a divorce, after a period of one year, when either party has "willfully deserted or abandoned the other." Code § 20-91(6). "Desertion is a breach of matrimonial duty, and is composed first, of the actual breaking off of the matrimonial cohabitation, and secondly, an intent to desert in the mind of the offender. Both must combine to make the desertion complete." Gottlieb, 19 Va. App. at 82-83 (quoting Zinkhan v. Zinkhan, 2 Va. App. 200, 205 (1986)); see also Barnes v. Barnes, 16 Va. App. 98, 101 (1993) ("Desertion occurs when one spouse breaks off marital cohabitation with the intent to remain apart permanently, without the consent and against the will of the other spouse."). "The burden of

proving desertion should be by a preponderance of the evidence." Bacon v. Bacon, 3 Va. App. 484, 490 (1986).

The circuit court found that husband had moved into the parties' basement after he had "reconcil[ed] with his high school girlfriend." The circuit court noted that husband testified that he left the marital residence "only after his clothes were left at the joint business." However, the evidence proved that husband purchased a home in Washington state with his former girlfriend in March 2016, which was several months before he actually left the marital residence in July 2016. That evidence permitted the circuit court to conclude that husband intended to desert wife when he broke off the matrimonial cohabitation. The circuit court did not err in finding that wife met her burden of proving desertion.

"To constitute a defense to [wife's] prima facie showing of desertion, [husband] must prove misconduct on the part of [wife] sufficient in scope to constitute a ground of divorce in [his] favor against [wife]." Zinkhan, 2 Va. App. at 205. Husband failed to prove misconduct on the part of wife; instead, he asserts that the marriage was "distressed" and he was "justified in leaving the marital home as the marriage continued to decline." We have previously held, however, that "[o]ne spouse is not legally justified in leaving the other spouse simply because the marital relationship has gradually broken down." Pillow v. Pillow, 13 Va. App. 271, 276 (1991); see also Sprott v. Sprott, 233 Va. 238, 242 (1987).

Accordingly, the circuit court did not abuse its discretion in granting wife a divorce based on desertion. "Where dual or multiple grounds for divorce exist, the trial judge can use [her] sound discretion to select the grounds upon which [she] will grant the divorce." Fadness v. Fadness, 52 Va. App. 833, 840 (2008) (quoting Konefal v. Konefal, 18 Va. App. 612, 613-14 (1994)); see also Lassen v. Lassen, 8 Va. App. 502, 505 (1989); Zinkhan, 2 Va. App. at 210.

*Double dip*

The circuit court found that husband withdrew funds from his TSP account and, then, bought the home in Washington with some of those funds. Husband argues, in his second assignment of error, that the circuit court erred by awarding wife fifty percent of his TSP account, valued as of January 1, 2016, and $42,500, as her interest in the house that husband purchased in Washington. Husband contends that the circuit court's equitable distribution award allowed wife to "double dip" into his TSP account. Wife concedes that the circuit court erred in making its equitable distribution award with respect to her share of the TSP account and her share of the Washington state home.

"[T]his Court is 'not bound by concessions of law by the parties.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 562 (2018) (quoting Epps v. Commonwealth, 47 Va. App. 687, 703 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410 (2007)). "Our fidelity to the uniform application of law precludes us from accepting concessions of law made on appeal." Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*). However, based on our independent review of the record, we agree that the circuit court erred. The circuit court awarded wife fifty percent of husband's TSP as of January 1, 2016, which reflected the value of the account before husband withdrew funds, some of which he used to purchase the Washington home.[4] The circuit court also awarded wife $42,500 for her share in husband's Washington home. These awards allowed wife to "double dip" into husband's TSP account. Therefore, we reverse and remand the circuit court's equitable distribution award to wife regarding the TSP account and husband's Washington home for it to determine wife's share of husband's TSP account, without double dipping.

---

[4] The circuit court further ordered that wife's award from the TSP would be less the $30,000 payment that she previously received from husband.

*Husband's FERS account*

In his third assignment of error, husband argues that the circuit court erred in holding that the evidence supported a finding that wife was entitled to the marital share of his monthly annuity from his FERS account because the circuit court "failed to consider the monetary contributions to the well-being of the family," contrary to Code § 20-107.3(E)(1). Husband asserts that he made "significant" monetary and non-monetary contributions to the well-being of the family and that wife "received more than what she should have expected, given her adultery." He contends that during the marriage, he worked hard and provided for his family, and wife should not have been entitled to fifty percent of his FERS account because she was "an adulteress" and benefited during the marriage from husband's "labor, diligence, and efforts."

"[R]etirement and pension plans, by their nature and diversity, present unique problems in a division of marital wealth, and the task of the trial court in making an equitable distribution of such benefits is not an easy one." Wright v. Wright, 61 Va. App. 432, 455 (2013) (quoting Banagan v. Banagan, 17 Va. App. 321, 324-25 (1998)). "The 'function of the [circuit court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property.'" Id. at 456 (quoting Fadness, 52 Va. App. at 841).

Code § 20-107.3(E) includes a list of factors that a circuit court must consider in deciding equitable distribution.

> The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of these factors . . . [but] does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.

Fadness, 52 Va. App. at 841 (quoting Woolley v. Woolley, 3 Va. App. 337, 345 (1986)). "When a trial court has considered the statutory factors, this Court will not reverse that court's ruling

unless the record indicates that the trial court abused its discretion." McIlwain v. McIlwain, 52 Va. App. 644, 650-51 (2008).

Here, the circuit court considered each of the Code § 20-107.3(E) factors. In discussing the factors, the circuit court acknowledged wife's affair in 1988 or 1989. However, as husband admits, the parties resumed cohabitation for approximately twenty-seven or twenty-eight years after wife's affair. When it reviewed the monetary and non-monetary contributions of each party to the well-being of the family, the circuit court found that "husband made the majority of the monetary contributions, while the wife made a majority of the non-monetary contributions." The circuit court concluded, "All in all, it would appear to have been a fifty/fifty division."

Contrary to husband's arguments, the circuit court considered all of the equitable distribution factors, including the parties' contributions to the well-being of the family. The circuit court did not abuse its discretion in awarding wife her marital share of husband's monthly annuity from his FERS account.

*Rule 5A:18*

In his fourth assignment of error, husband argues that the circuit court erred by ordering him to maintain an existing life insurance policy and designate wife as the beneficiary because "it failed to take into consideration any of the elements of Code of Virginia § 20-107.1:1." Husband contends that he preserved this argument with his objections to the final decree of divorce. Although husband objected to the circuit court's ruling that he had to maintain the life insurance policy and designate wife as beneficiary, he did not object on the basis that the circuit court failed to consider the factors in Code § 20-107.1:1. He raises this argument for the first time on appeal.

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 315

(2013) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)); see Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this argument.

*Rule 5A:8*

In his fifth assignment of error, husband argues that the circuit court erred in finding that the evidence supported valuing his TSP account as of January 1, 2016, because the parties had agreed on how to distribute the funds. Husband asserts that the parties' agreement was recorded and transcribed by the court reporter at the February 12, 2018 hearing, and both parties affirmed their agreement on the record. Wife, on the other hand, contends that "the purported 'agreement' was not a property settlement agreement within the meaning of § 20-155."

In his sixth assignment of error, husband argues that the circuit court erred by awarding wife spousal support and imputing income to him "without taking into consideration the evidence presented that [husband] worked two full-time jobs while married and can no longer work due to his failing health, that [wife] earns more than [husband], and [wife] did not present any evidence that she needs support." Both husband and wife rely on evidence from the February 12, 2018 hearing to support their arguments.

In his seventh assignment of error, husband argues that circuit court failed to consider the tax consequences of distributing the TSP account. He asserts that he paid all of the taxes on the money he withdrew from his TSP account and that the circuit court did not consider his tax payments when it distributed this asset. However, the circuit court held that "no evidence was presented as a tax consequence of any equitable distribution award."

"On appeal, we presume the judgment of the trial court is correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by appellant." Bay v. Commonwealth, 60 Va. App. 520, 528 (2012).

Husband failed to file timely the transcript from the February 12, 2018 hearing.[5] Rule 5A:8. For the fifth assignment of error, we are unable to determine whether the parties had an agreement pursuant to Code § 20-155 without the transcript. Likewise, for the sixth assignment of error, we cannot review the evidence and arguments presented to the circuit court regarding husband's ability to pay spousal support and wife's need for spousal support. We are unable to evaluate the circuit court's ruling to impute income to husband without the trial transcript. For the seventh assignment of error, we are unable to review the circuit court's ruling that no evidence was presented about any tax consequences, nor can we review what evidence husband presented concerning the tax implications of the equitable distribution award.[6]

"When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignment of error affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii). "In the absence [of a sufficient record], we will not consider the point." Robinson v. Robinson, 50 Va. App. 189, 197 (2007) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185 (1991)).

We have reviewed the record and the opening brief. We conclude that a timely filed transcript or written statement of facts is indispensable to a determination of these three assignments of error. See Bay, 60 Va. App. at 528-29; Shiembob v. Shiembob, 55 Va. App. 234, 246 (2009); Anderson v. Commonwealth, 13 Va. App. 506, 508-09 (1992); Turner v. Commonwealth, 2 Va. App. 96, 99-100 (1986).

---

[5] The circuit court entered the final decree of divorce on May 22, 2018. Pursuant to Rule 5A:8, the transcripts were due by July 21, 2018. Husband filed the February 12, 2018 hearing transcript on August 8, 2018.

[6] The record includes an exhibit that provided a detailed breakdown of the withdrawal from the TSP account, including the amount withheld for federal taxes. However, without the trial transcript, we are unable to review husband's testimony about the taxes and what the tax implications were.

- 10 -

*Retirement payments*

In his eighth assignment of error, husband argues that the circuit court erred in holding that wife was "entitled to fifty percent (50%) of [husband's] Thrift Savings Plan and Federal Employment Retirement Service account immediately, without taking into consideration the fact that [wife] will not likely retire for three years." He contends that wife is in better physical health than he is and is able to work while she also receives a portion of husband's retirement. He asserts that the circuit court's equitable distribution award regarding husband's retirement accounts "causes an undue hardship without the Court's consideration of the 'ages and physical and mental conditions of the parties.'"

Code § 20-107.3(G)(1) states that "upon consideration of the factors set forth in subsection E," a trial court "may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits." The statute further provides that "the court shall only direct that payment be made as such benefits are payable." Code § 20-107.3(G)(1).

The circuit court considered the Code § 20-107.3(E) factors, including the age and physical and mental health of the parties. The circuit court found that at the time of the hearing, wife was sixty-two years old and "in fairly good condition," while husband was sixty-four years old and had several medical conditions that required multiple medications. The circuit court considered that wife was working full-time, but planned to retire when she was sixty-five years old. It also considered that husband was retired, but still had an active CPA license.

After considering all of the Code § 20-107.3(E) factors, the circuit court classified, valued, and distributed the parties' marital property, including their retirement accounts. It held that "[e]ach party [was] to have one half of the other's retirement with the other party to have [a] survivor option." As noted earlier, the circuit court valued husband's TSP account as of January 1, 2016, and

ordered wife's share to be offset by the $30,000 that she already had received from the account. It further held that wife's share of the FERS account would be "determined as of the Employee's date of retirement." Thus, the record reflects that the circuit court considered the Code § 20-107.3(E) factors, including the parties' ages and physical and mental conditions.

The circuit court complied with the statute by ordering that "payment be made as such benefits are payable." Code § 20-107.3(G)(1). Husband essentially asks us to rewrite Code § 20-107.3 to allow for a deferral of benefits until both parties retire; however, Code § 20-107.3 does not allow for such a deferral, and we cannot rewrite it. "Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear." Barr v. Town & Country Properties, Inc., 240 Va. 292, 295 (1990) (quoting Anderson v. Commonwealth, 182 Va. 560, 566 (1944)). "It is not the function of the courts to add to or amend clear statutory language." Gilliam v. McGrady, 279 Va. 703, 709 (2010). "We will assume that the General Assembly chose its language with care and will apply it as written." Id.

Accordingly, the circuit court did not err in ordering that wife was entitled to her share of husband's retirement as of the date of his retirement.

*Attorney's fees and costs*

Wife requests an award of attorney's fees and costs incurred on appeal. See Rule 5A:30(b); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). On consideration of the record before us, we deny her request for an award of attorney's fees and costs incurred on appeal.

- 12 -

CONCLUSION

For the reasons discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed in part, reversed in part, and remanded.</u>